867 So.2d 651 (2004)
BROADMOOR, L.L.C.
v.
ERNEST N. MORIAL NEW ORLEANS EXHIBITION HALL AUTHORITY.
Nos. 2004-CC-0211, 2004-CC-0212.
Supreme Court of Louisiana.
March 18, 2004.
Rehearing Denied March 31, 2004.
*652 Michael E. Botnick, Ewell E. Eagan, Jr., Marcel Garsaud, Jr., New Orleans, Tina C. White, Howard E. Sinor, Jr., New Orleans, Gordon, Arata, McCollam, Duplantis & Eagan; Michael D. Hunt, Baton Rouge, H. Alston Johnson, III, Phelps Dunbar, for Applicant (No. 2004-CC-211).
Robert M. Johnston, New Orleans, Marguerite K. Kingsmill, Harry T. Lemmon, Mark S. Senter, Metairie, Kingsmill, Riess; New Orleans, Julie A. Richards, Gretna, Michael Q. Walshe, Jr., New Orleans, Walter F. Wolf, III, Philip A. Wittmann, Stone, Pigman, Walther Wittmann, New Orleans, Russ M. Herman, Herman, Herman, Katz & Cotlar, for Respondent (No. 2004-CC-0211).
W.P. Wray, Jr., for Louisiana Associated General Contractor (Amicus Curiae).
Charles S. McCowan, Jr., Charles L. Patin, Jr., Baton Rouge, for Louisiana Municipal Association (Amicus Curiae).
*653 Leonard L. Levenson, New Orleans, for McDonnel (Amicus Curiae).
Loretta G. Mince, Robert M. Walmsley, Jr., James R. Swanson, New Orleans, for New Orleans MetropolitanConvention (Amicus Curiae).
Eliska M. Plunkett, Ernst F. Preis, Jr., New Orleans, for Greater New Orleans Hotel and Lodging (Amicus Curiae).
Julie A. Richards, Gretna, Michael Q. Walshe, Jr., New Orleans, Walter F. Wolf, III, Philip A. Wittmann, Stone, Pigman, Walther Wittmann, New Orleans, for Applicant (No. 2004-CC-212).
Michael E. Botnick, Ewell E. Eagan, Jr., Marcel Garsaud, Jr., New Orleans, Tina C. White, Howard E. Sinor, Jr., New Orleans, Gordon, Arata, McCollam, Duplantis & Eagan; Michael D. Hunt, Baton Rouge, H. Alston Johnson, III, Phelps Dunbar, Robert M. Johnston, New Orleans, Marguerite K. Kingsmill, Harry T. Lemmon, Mark S. Senter, Metairie, Kingsmill, Riess, New Orleans,; Russ M. Herman, Herman, Herman, Katz & Cotlar, for Respondent (No. 2004-CC-0212).
W.P. Wray, Jr., for Louisiana Associated General Contractor (Amicus Curiae).
Charles S. McCowan, Jr., Charles L. Patin, Jr., for Louisiana Municipal Association (Amicus Curiae).
Leonard L. Levenson, for McDonnel (Amicus Curiae).
Loretta G. Mince, Robert M. Walmsley, Jr., James R. Swanson, for New Orleans MetropolitanConvention (Amicus Curiae).
Eliska M. Plunkett, Ernst F. Preis, Jr., for Greater New Orleans Hotel and Lodging (Amicus Curiae).
JOHNSON, Justice.
This litigation arises from a dispute over the public bids submitted for construction of Phase IV of the Ernest N. Morial Exhibition Hall. We granted this writ of certiorari to determine whether the court of appeal was correct in granting Broadmoor's application for supervisory writs, reversing the trial court's decision to deny the request for a preliminary injunction, and granting the preliminary injunction. After a careful review of the record and relevant law, we affirm the court of appeal's decision.

FACTS AND PROCEDURAL HISTORY
The Ernest N. Morial New Orleans Exhibit Hall Authority ("Authority"), a political subdivision of the State of Louisiana, was organized to plan, build and operate the New Orleans Convention Center.[1] The Convention Center was built in three phases and consists of approximately 3.5 million square feet of exhibit halls, meeting rooms, ballrooms and ancillary facilities and spaces. On August 8, 2003, the Authority announced its intention to receive bids on the construction of Phase IV of the facility. The Authority received the following bids:

Yates/Landis $268,445,000.00
Broadmoor $275,000,000.00
McDonnell/PLC $278,235,000.00

After the bids were opened, representatives of Sizeler Architects, L.L.C. ("Sizeler"),[2] as well as staff members of the Authority, began independent evaluations of the bids. Sizeler concluded that the Yates/Landis bid was the lowest responsive bid. The bidders were also allowed to review all of the bids.
*654 On October 8, 2003, Broadmoor submitted a formal protest to the Authority concerning Yates/Landis' bid. Broadmoor noted various "irregularities, deviations and omissions" in the Yates/Landis bid, including inter alia: (1) failure to include a certificate of insurance or a letter of insurability; (2) failure to attend pre-bid meetings and failure to purchase a full size set of bidding documents; (3) failure to submit a corporate resolution of authority. On October 10, 2003, Yates/Landis responded to Broadmoor's complaint, essentially denying any irregularities, and stating that any alleged deficiencies are "minor and technical in nature."
On October 15, 2003, the Construction Committee of the Authority convened to review the bids and to make a recommendation to the Authority. After hearing the presentations from the Board's staff, the architects, Broadmoor, Yates/Landis, and members of the public, the Committee decided to defer action on the bids to the full Board of Commissioners for the Authority, without making a recommendation. The Board of Commissioners met on October 22, 2003. After being informed that Senator Lambert Boissiere had requested an opinion from the Attorney General on the issue of insurance provisions within a bid and the waivability of bid requirements, the Board decided not to make a decision on the award of the contract at that time.
On October 29, 2003, the Attorney General issued an opinion, concluding, "[T]he documents which set out the requirements for the phase IV of the Convention Center required all of the bidders to attach certificates of insurance or statements of insurability to the bid." The Attorney General also opined that the failure to furnish a certificate of insurance or statement of insurability is a substantive deviation from the bid requirements, which may not be waived by the Authority.
Also on October 29, 2003, Broadmoor filed a petition for temporary restraining order, preliminary injunction, and permanent injunction, seeking to restrain and enjoin the Authority from considering and/or awarding the contract to Yates/Landis.[3] Yates/Landis filed a petition to intervene in the action. Frischhertz/Fisk Joint Venture, Gallo Mechanical Contractors, Inc., subcontractors of Broadmoor, and Southeast Louisiana Building and Construction Trade Council also intervened in the action. Initially, the trial court granted the temporary restraining order. However, following a contradictory hearing, the trial court rescinded the order. Thereafter, the Authority accepted the bid of Yates/Landis as being the lowest responsive and responsible bid and sent Yates/Landis a notice of acceptance.
On November 3, 2003, the trial court held a hearing on Broadmoor's request for *655 a preliminary injunction. Following the hearing, the trial court denied the request, stating:
The insurance issue bothers me greatly. The requirement is that the certificate of insurance or the document of insurability should have been submitted. But I cannot say in light of the [American Institute of Architects] requirements that the Board was wrong in its conclusion. They were not arbitrary. They may have been wrong, but they were not arbitrary. So much for the insurance. All the other arguments are non-substantial.
Broadmoor filed an application for supervisory writs in the court of appeal.[4] The court of appeal granted Broadmoor's writ application, reversed the trial court's ruling, granted the request for the preliminary injunction, and ordered the Authority to reject Yates/Landis bid as non-responsive. Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority, 03-1996 (La.App. 4 Cir. 12/22/03), 865 So.2d 136. The court of appeal concluded: (1) the Authority acted arbitrarily and capriciously in accepting the bid from Yates/Landis due to the failure to provide a certificate of insurance or letter of insurability regarding builder's risk insurance, which constituted a non-waivable substantive deviation from the bid requirements; (2) Yates/Landis' failure to attend the mandatory pre-bid conferences prior to bidding precluded it from being considered a qualified responsive bidder; (3) Yates/Landis' bid was not responsive due to its failure to submit a resolution of authority for the joint venture.
Yates/Landis and the Authority both filed applications for writ of certiorari.[5] We granted both writ applications and consolidated the matters. Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority, 04-0211, 04-0212 (La.2/11/04), 868 So.2d 702, 2004 WL 300406.

DISCUSSION
The primary purpose of injunctive relief is to prevent the occurrence of future acts that may result in irreparable injury, loss or damage to the applicant. LSA-C.C.P. art. 3601. During the pendency of an action for an injunction, the court may issue a temporary restraining order, a preliminary injunction or both. Arco Oil & Gas Co. v. DeShazer, 98-1487 (La.1/20/99), 728 So.2d 841. A preliminary injunction may be granted pending trial on merits of a permanent injunction in order to preserve preexisting status of parties. Metro Riverboat Associates, Inc. v. Bally's Louisiana, Inc., 97-1672 (La.App. 4 Cir. 1/14/98), 706 So.2d 553, writ denied XXXX-XXXX (La.5/29/98), 720 So.2d 339. The purpose of a preliminary injunction is to preserve status quo until trial on merits; on the other hand, a permanent injunction can be issued only after full trial on merits in which burden of proof is by preponderance of evidence. Louisiana Gaming Corp. v. Jerry's Package Store, Inc., 629 So.2d 479 (La.App. 3 Cir.1993).[6]
*656 It is well settled under Louisiana law that the judicial branch may not ordinarily enjoin a municipal body from acting under the guise of its legislative powers. La. Associated Gen. Contr., Inc. v. Calcasieu Parish School Bd., 586 So.2d 1354, 1357 (La.1991). However, where the threatened action of a municipal body is "in direct violation of a prohibitory law" a court of equity may enjoin the threatened action. Id. Thus, we must determine whether the Authority's action in accepting the Yates/Landis bid as the lowest responsive bid directly violated a prohibitory law.
Louisiana's Public Bid Law, set forth in LSA-R.S. 38:2212 et seq., is a prohibitory law founded on public policy. La. Associated Gen. Contr., Inc., 586 So.2d at 1359; Haughton Elevator Div. v. State Division of Administration, 367 So.2d 1161 (La.1979). Pursuant to the Public Bid Law, the legislature has specifically prescribed the conditions upon which it will permit public work to be done on its behalf or on behalf of its political subdivisions. The statute was enacted in the interest of the taxpaying citizens and has for its purpose the protecting of them against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices. Id. A political entity has no authority to take any action which is inconsistent with the Public Bid Law. Id. at 1362.
As set forth in Acts 1977, No. 103, § 1, LSA-R.S. 38:2212(A)(1) provided in relevant part:
A. (1) All public work exceeding the sum of five thousand dollars including both labor and materials and all purchases of materials or supplies exceeding the sum of two thousand five hundred dollars to be paid out of public funds, to be done by a public entity shall be advertised and let by contract to the lowest responsible bidder who had bid according to the contract, plans and specifications as advertised, and no such public work shall be done and no such purchase shall be made except as provided in this Part.
(Emphasis added).
In 1984, the legislature enacted LSA-R.S. 38:2212(A)(1)(b) to provide, "The provisions and requirements of this Section shall not be waived by any public entity." In 1986, subparagraph A(1)(b) was amended to provide, "The provisions and requirements of this Section, those stated in the advertisement for bids, and those required on the bid form shall not be considered as informalities and shall not be waived by any public entity." (Emphasis added). In 1987, the statute was again amended to provide in pertinent part:
(b) The provisions and requirements of this Section, those stated in the advertisement for bids, and those required on the bid form shall not be waived by any public entity.
The Public Bid Law requires that all public construction contracts of major importance be let to the "lowest responsible bidder." La. Associated Gen. Contr., Inc., 586 So.2d at 1362. The term "lowest responsible bidder" does not constrain the public authority to accept the lowest monetary bid. Id.; Haughton Elevator Div., supra. Rather, the Public Bid Law vests the public entity contracting the work with wide discretion to determine bidder responsibility. Id. In determining bidder responsibility, the public entity may look to financial ability, skill, integrity, business judgment, experience, reputation, quality of previous work on contracts, and other similar factors bearing on the bidder's ability to successfully perform the contract. Id.; Housing Authority of the *657 City of Opelousas, Louisiana v. Pittman Construction Co., Inc., 264 F.2d 695, 698 (5th Cir.1959). See also Cooper & Horton, COMPETITIVE BID REQUIREMENTS FOR SCHOOL DISTRICT CONTRACTS, 46 Tex.B.J. 1154, 1155 (1983) (The criteria for determining bidder responsibility includes such things as experience, skill, ability, business judgment, financial capacity, integrity, honesty, possession of necessary facilities or equipment, previous performance, reputation, promptness and any other factors which could reasonably be asserted as being relevant to successful performance.).
In interpreting various amendments to the Public Bid Law, specifically, LSA-R.S. 38:2214, in New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223 (La.4/10/95), 653 So.2d 538, this Court stated:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written without further interpretation in search of the intent of the legislature. (Citations omitted). The legislature is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law. (Citations omitted).
Rosenbush, 653 So.2d at 544.
In the instant case, the Legislature has amended LSA-R.S. 38:2214(A)(1) during the course of several legislative sessions. Initially, although the statute required bids to be made "according to the contract, plans and specifications as advertised," the statute was silent regarding the waivability of the requirements. Thus, it appears that the Authority had discretion to waive certain requirements contained in the advertisement and the bid form.
However, in enacting the most recent amendments, the legislature has made it clear that the requirements contained "in the advertisement for bids and those required on the bid form" are not waivable. As this Court recognized in Rosenbush, supra, when the legislature added subsection (b) to LSA-R.S. 38:2212(A)(1), we presume that the legislature intended to change the law. As it stands now, the Authority cannot waive any requirements contained in its bid requirements. The language of LSA-R.S. 38:2212(A)(1)(b) is clear and unambiguous: when a public entity elects to place certain requirements in its advertisements for bids and on its bid forms, that entity is bound by those requirements and may not choose to waive them at a later date.
Moreover, since the 1987 amendment to LSA-R.S. 38:2212, the courts have strictly construed the requirements set forth in the statute. In Wallace C. Drennan, Inc. v. Sewerage & Water Bd. of New Orleans, 00-1146 (La.App. 4 Cir. 10/3/01), 798 So.2d 1167, citing Boh Bros. Const. Co., L.L.C. v. Dept. of Transp. & Dev., 97-0168 (La.App. 1 Cir. 7/14/97), 698 So.2d 675, writ denied, 97-2113 (La.11/21/97), 703 So.2d 1309, the Court stated:
[W]e construe La.R.S. 38:2212(A)(1)(b) to preclude an entity from waiving substantive provisions and requirements of the Public Bid Law, the advertisement for bids and bid forms.... [I]t may not treat substantive requirements of the Bid Law, the Advertisement for Bids and Bid Forms as mere informalities in order to justify its decision to waive deviation in a bid.
Drennan, 798 So.2d at 1173. Also, in Barriere Construction Co., L.L.C. v. Terrebonne Parish Consolidated Government, 99-2271 (La.App. 1 Cir. 2/18/00), 754 So.2d 1123, writ denied, 00-0801 (La.5/5/00), 761 So.2d 546, the court stated:

*658 The statutory requirements, advertisement requirements, and bid form requirements, including those included by reference to other documents, must be completely and accurately observed. The Public Bid Law could not be more clear in stating that a bidder's failure to comply with every detail can invalidate the bid. The consequences of such defects should be on the bidder who prepares the bid.
Barriere, 754 So.2d at 1127.
With these precepts in mind, we now turn to an examination of the record to determine whether the facts support the court of appeal's conclusion that the trial court erred in denying Broadmoor's request for an preliminary injunction.
Builders' Risk Insurance
In this case, the bid documents, as well as the plans and specifications used during the bid process, were prepared by Sizeler Architects, L.L.C., pursuant to a professional services contract with the Authority. Article 14 of the bid instructions state:
14.1 Bidders shall deliver Certificates of Insurance or statement of insurability acceptable to the Owner with their bids, to demonstrate compliance with Article 11 of the Supplementary Conditions.
14.2 Failure of the Successful Bidder to deliver said Certificates or statement of insurability with the Bid may result in the Bid being deemed incomplete and non-responsive. In the event of such failure, the Owner reserves the right to offer the Contract to the next lowest responsive bidder or re-advertise the project to request a completely new set of bids.
The Supplementary Conditions contained in the bid documents at issue derive from a document prepared by the American Institute of Architects, the AIA A-201 General Conditions. The section of the bid documents entitled "General Conditions," provides:
A. General Conditions: A.I.A. Document A201, General Conditions of the Contract for Construction1997 Edition, Articles 1 through 16 inclusive, of the American Institute of Architects, are the General Conditions of this Contract and are bound into this Project Manual following this page.
B. Contractor's Responsibility: The Contractor shall acquaint himself with the provisions of the General Conditions and notify all subcontractors, suppliers and other parties, individuals and agencies engaged in the Work as to their contents.
C. Contractual Adjustments: No contractual adjustments will be permitted for failure of the Contractor to fully acquaint himself and other interested parties with the conditions of A.I.A. Document A201.

* * *
Article 11 of the Supplementary Conditions sets forth the insurance and bonds that must be obtained by the contractor. Section 11.1 sets forth the requirements for contractor's liability insurance.[7] Section 11.1.4.1 provides, "Certificates of Insurance or Affidavit acceptable to the Owner shall be submitted to Owner with the bid, as specified in the Instructions to Bidders." (Emphasis added). Section 11.3 requires the Contractor to purchase and maintain property insurance, which includes "`all risk' (as defined in the policy *659 form) insurance for physical loss or damage in the amount equal to the Contract Sum ...," which is also known as builders' risk insurance.[8]
Additionally, Exhibit Number 2 of the bid form stated in pertinent part:
BIDDER SHALL ATTACH INSURANCE CERTIFICATE OR STATEMENT OF INSURABILITY FROM BIDDER'S INSURER TO THIS PAGE. IF STATEMENT OF INSURABILITY IS UTILIZED, INSURER SHALL STATE THAT INSURANCE COVERAGES REQUIRED BY THE BID DOCUMENTS WILL BE PROVIDED AND THAT THE REQUIRED CERTIFICATE WILL BE ISSUED TO THE BIDDER WITHIN EIGHT (8) CALENDAR DAYS AFTER INSURER IS NOTIFIED BY BIDDER OF AWARD. THE BIDDER SHALL BEAR THE RESPONSIBILITY OF NOTIFYING THE INSURER REGARDING ITS SELECTION OF CONTRACT AWARD AND IT IS THE RESPONSIBILITY OF THE BIDDER TO DELIVER THE REQUIRED CERTIFICATE TO THE OWNER WITHIN TEN (10) CALENDAR DAYS AFTER RECEIPT OF "NOTICE OF AWARD" (TWO (2) CALENDAR DAYS AFTER RECEIVING CERTIFICATE FROM INSURER).

BIDDER SHALL ATTACH A COPY OF ITS INSURANCE CERTIFICATE OR STATEMENT TO THIS PAGE, SIGN THIS PAGE, DATE IT AND INCLUDE THIS PAGE WITH THE BID
Addendum Number 10 to the bidding documents provides in part:
It is called to the bidders' attention that in Article 11 of the General Conditions, the insurance certificate must name [the Authority] and ... New Orleans Public Facilities Management, Inc. and others as additional insureds. Bidder's certificate of insurance shall include the named insureds and must indicate the waiver of subrogation required by Article 11 of the General Conditions. The insurance company selected by bidder must have an A.M. Best Insurance rating of A-VI.
In support of its contention that builders' risk insurance was not required to be submitted with the bid, the Authority relies first on an affidavit of Ian Thompson, a principal of Sizeler Architects. Mr. Thompson attested that he "prepared the Bid Specifications, Invitation to Bid, Instructions to Bidders, Bid Form and all other documents relative to the bids sought by the Authority on the Phase IV Project." Mr. Thompson also stated that in his "professional judgment," Yates/Landis "complied fully and completely and in all substantive respects" with the bid documents. He further affirmed that Yates/Landis "complied fully and completely and in all substantive respects with all of the insurance requirements of the Bid Documents."
Additionally, Billy Sizeler of Sizeler Architects testified before the Construction Committee of the Authority that "it is pretty much an industry standard, that a contractor is not required to present a builders risk insurance [certificate] at the time of the bid.... It's a standard industry *660 practice that within ten days after the bids are received that the contractor has that time to present a builders risk insurance policy to the owner." According to Mr. Sizeler, only a certificate of general liability insurance is required to be submitted with the bid. He stated that Article 11.3 "does not state that a certificate of insurance shall be presented to the owner with the bid."
Moreover, a Bid Tabulation Form prepared by Sizeler in connection with its review of the bids, provides in part:
Broadmoor, LLC
COMMENTS:
All required Insurance Certificates submitted with bid along with evidence of insurability for Builder's Risk.
McDonnel/PCL, a Joint Venture
COMMENTS:
Evidence of insurability for all insurance submitted with bid.
Yates/Landis, a Joint Venture
COMMENTS:
All required Insurance Certificates submitted with bid. Builder's Risk not included, however, Builder's Risk is not required to be submitted with bid.
As stated above, the conditions mandating the procurement of builders' risk insurance were included in the bid documents prepared by Sizeler. The bid form specifically stated that the bidder was required to attach the insurance certificate or statement of insurability to the form. The form further provided that if a statement of insurability was provided, then a statement from the insurer, attesting that the required certificate of insurance would be issued within eight days, was required to be attached as well.
Furthermore, Article 14 of the bid instructions required a certificate of insurance or statement of insurability to be submitted along with the contractors' bids. Article 11.3 of the supplementary conditions required the contractors to purchase and maintain builders' risk insurance. When the two provisions of the bid requirements are read in para materia, the plain language of the requirements reveals that documentation in the form of a certificate of insurance or a statement of insurability is required to show that the requirements of Article 11 will be met. Pursuant to the terms of Article 14, as well as the instructions included on the bid form, the insurance documentation is required to be submitted along with the bid. Consequently, all bidders were required to either obtain a certificate of builders' risk insurance, or obtain a statement of insurability regarding the builders' risk coverage and submit it along with the bid documents. Pursuant to LSA-R.S. 38:2212(A)(1)(b), the provisions required on the bid form "shall not be waived by any public entity."
Moreover, even if the provisions of Article 14 and Article 11 are somehow construed to be ambiguous, Article 4, Section 4.5 of the bid instructions provides, "Should there be any discrepancy between any of the information contained in these Documents, the more stringent requirement(s) shall govern." In this case, the more stringent requirement would be the requirement that the certificate of insurance or the statement of insurability be delivered with the bid. Therefore, we find that the failure of Yates/Landis to comply with the mandate constitutes a substantive deviation from the bid requirements which cannot be waived, neither expressly nor implicitly, by the Authority or its architect.
Resolution Authority
Exhibit Number 9 of the Bid Form provides:

*661 BIDDER SHALL ATTACH JOINT VENTURE AFFIDAVITS TO THIS PAGE SIGN, IT DATE IT AND SUBMIT IT AS PART OF BID
IF THIS FORM IS NOT APPLICABLE, BIDDER MUST SIGN AND DATE THIS PAGE, MARK IT "N/A", AND SUBMIT THIS PAGE WITH BID.
Also, the record contains a document entitled, "Addendum No. 10September 23, 2003." The document, generated by Sizeler and addressed to all holders of the bid documents, states in part:
This Addendum forms a part of the Contract Documents and modifies the original Bidding Documents dated August 8, 2003. The contents of this Addendum shall be included in the Contract Documents when the Agreement is executed. Changes made by this Addendum take precedence over the Documents of earlier date.
The addendum contains, inter alia, responses to various pre-bid questions which had been submitted to Sizeler. Included in the addendum was the following question and answer:
How is the bid to be executed by a joint venture? What documentation will be required by the owner to verify authority of the person executing the document on behalf of the joint venture?
Owner answer: If the Joint Venture is in the form of an entity separate from either of the venture partners, a resolution from that entity is required. If the joint venture is not a separate entity, the bidder must provide a resolution from all joint ventures authorizing the signature of on the bid forms.
In Stafford Construction Co. v. Terrebonne Parish School Board, 560 So.2d 558 (La.App. 1 Cir.1990), the School Board advertised for bids to perform renovations and additions to two schools located in the parish. The contract was awarded to the lowest bidder. Stafford Construction Company ("Stafford"), the second lowest bidder, sought to enjoin the School Board and to nullify the bid submitted by the lowest bidder, alleging that the lowest bidder's bid package did not include a corporate resolution authorizing the signing of the proposal or bid. The court, citing LSA-R.S. 38:2212 and LSA-R.S. 38:2220,[9] concluded that the failure of the successful bidder to attach a bid form corporate resolution authorizing signing of the proposal or the bid was an error of substance, rather than of form, and rendered the bid null and void.
Yates/Landis does not dispute that it is a separate entity from W.G. Yates & Sons Construction Company ("Yates Construction") and Landis Construction Company, L.L.C. ("Landis Construction"). Yet, the record does not contain a resolution from the Yates/Landis joint venture, as required *662 by the bidding documents. Rather, the record reveals that Yates/Landis' bid contained two separate corporate resolutions, one from Yates Construction and one from Landis Construction. Neither of the resolutions submitted mentioned the joint venture, and there was no documentation submitted to verify who was authorized to act on behalf of the joint venture.[10] Therefore, we find that the court of appeal correctly concluded that the failure to submit the resolution along with the bid constituted a failure to comply with the bid requirements.
Attendance at Pre-Bid Conferences
LSA-R.S. 38:2212(A)(1)(b) provides that the provisions and requirements stated in the advertisement for bids may not be waived. Moreover, courts have found that the failure to attend a mandatory pre-bid meeting resulted in the disqualification as a bidder. Schaff Bros. Contrs. v. Jefferson Parish School Bd., 94-177 (La.App. 5 Cir.7/26/94), 641 So.2d 642; Gibbs Construction Co., Inc. v. Bd. of Sup'vrs of L.S.U., 447 So.2d 90 (La.App. 4 Cir.1984.). In Schaff, the Jefferson Parish School Board advertised for bids for replacing the air conditioning chiller units at one of its schools. The advertisement for bids stated, "A Mandatory Pre-Bid Meeting will be held...." Further, the bid instructions stated that attendance at the meeting was mandatory. No representative of Schaff Bros. Contractors, Inc. ("Schaff") was in attendance at the meeting. Schaff submitted a bid which was nearly $6,000 lower than the next lowest bid. The School Board's architect recommended rejecting Schaff's bid for failure to attend the pre-bid meeting. Following a hearing to contest the architect's recommendation, the Board determined that it would not waive the requirement of attendance at the pre-bid meeting, and therefore, would not consider the bid submitted by Schaff. Schaff then sought to enjoin the School Board from awarding the contract to the next lowest bidder and for damages. The court of appeal upheld the School Board's actions, stating:
There is no question here that the advertisement, as well as the bid package itself, contained the requirement that bidders attend the pre-bid meeting. Schaff did not attend the meeting and therefore did not "bid" according to the specifications as advertised. In this circumstance, we find that its "bid" was properly not considered.
Schaff Bros. Contrs., 641 So.2d at 644.
In this case, the Advertisement for Bids provided in relevant part:

Two Pre-Bid Conferences will be held at the offices of Sizeler Architects ... on August 22, 2003, at 10:00 AM and on September 5, 2003, at 10:00 AM. Attendance is mandatory ....
Additionally, the transcript/minutes of the pre-bid conference held on August 22, 2203 reflects that a representative of the Authority opened the meeting by stating, "This is the first one of two. Both are mandatory attendance."
Broadmoor contends that Yates/Landis was not represented at the pre-bid conferences, as the joint venture was not in existence at the time of the conferences. Conversely, Yates/Landis asserts that a representative of the joint venture attended both conferences, as the Yates partner attended both pre-bid conferences, and the Landis partner attended one of the two. The court of appeal concluded:

*663 It is clear that at the time of the pre-bid meetings and the purchase of the bidding materials, the Yates/Landis joint venture did not exist. Thus, there could not be a representative from the joint venture at the pre-bid meetings. The question then becomes is Yates/Landis, as a joint venture, disqualified as a responsive bidder because it did not attend the meetings and purchase the bidding documents as a joint venture?
The law on joint venture provides that partners in a joint venture may act on behalf of the joint venture. La. C.C. article 2814; Latiolais v. BFI of Louisiana, Inc., 567 So.2d 1159 (La.App. 3 Cir.1990); Smith v. Lonzo, XXXX-XXXX (La.App. 3 Cir. 2/5/03), 838 So.2d 918. However, the joint venture did not exist at the time of the meetings. Thus, the actions of Yates cannot be construed as acting on behalf of the joint venture. As Yates/Landis, a Joint Venture, did not attend the mandatory pre-bid meetings, it could not be a qualified responsive bidder.
Since the essential elements of a joint venture and a partnership are the same, joint ventures are generally governed by partnership law. Latiolais v. BFI of Louisiana, Inc., 567 So.2d 1159 (La.App. 3 Cir.1990). LSA-C.C. art. 2801 defines "partnership" as follows:
[A] juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.
Joint ventures arise only where the parties intended the relationship to exist, and they are ultimately predicated upon contract either express or implied. Smith v. Lonzo, 02-1053 (La.App. 3 Cir. 2/5/03), 838 So.2d 918; Pillsbury Mills, Inc. v. Chehardy, 231 La. 111, 124, 90 So.2d 797, 801 (1956), citing Daspit v. Sinclair Refining Co., 199 La. 441, 6 So.2d 341 (1942).
The Joint Venture Agreement between Yates and Landis was formerly executed on September 12, 2003, a week after the second mandatory pre-bid conference was held. However, Yates/Landis contends that the joint venture was formed prior to the date of the written agreement. In fact, the attendance sheet from the conference held on September 5, 2003 reveals that Jim Lewis signed in as a representative of Yates/Landis. Nevertheless, it is undisputed that no one signed in as a representative of the Yates/Landis Joint Venture pre-bid conference held on August 22, 2003. The attendance sheet from that conference reflects that Mr. Daniels signed in as a representative of Yates Construction, and no one from Landis Construction was in attendance. While we acknowledge that no express contract is required to form a joint venture, there is nothing in the record to support the contention that Mr. Daniels attended the first pre-bid conference as a representative of Yates/Landis. Accordingly, we affirm the court of appeal's conclusion that the joint venture failed to comply with the bid requirement that all bidders were required to attend two mandatory pre-bid conferences.

CONCLUSION
For the foregoing reasons, we affirm the court of appeal's conclusion that the Authority impermissively waived the requirements regarding builders' risk insurance, attendance at pre-bid conferences, and submission of a resolution concerning the joint venture, and it abused its discretion when it selected Yates/Landis' bid as the lowest responsive bid. Accordingly, the decision to grant the preliminary injunction is affirmed, and the Authority is ordered *664 to reject the Yates/Landis bid as non-responsive.
Any application for rehearing shall be filed by the end of business on Wednesday, March 24, 2004.
AFFIRMED.
VICTORY, J., dissents for the reasons assigned by Justices KNOLL and WEIMER.
KNOLL, J., dissents and assigns reasons and further dissents for the reasons assigned by Justice WEIMER.
WEIMER, J., dissents and assigns reasons.
CALOGERO, C.J., concurs and assigns reasons.
CALOGERO, Chief Justice, concurring.
I concur in the majority opinion and this resolution which affirms the ruling of the court of appeal, as regards the ultimate conclusion that an insurance certificate or statement of insurability was required to be submitted with the Yates/Landis bid. I write separately to emphasize my agreement with the more stringent interpretation of the bid documents and bid form with regard to the inclusion in the bid of the insurance certificate or statement of insurability regarding the builder's risk insurance, as is required by Section 4.5 of the Instructions to Bidders[1] when there is a discrepancy, or ambiguity, in the information contained in the Documents. Also, the majority's interpretation of the requirements regarding the insurance certificate or statement of insurability advances the purpose of the Public Bid Law and is most consistent therewith. There is no level playing field for the bidders on public projects unless all of them are required to comply with the bid documents.
KNOLL, Justice, dissenting.
I dissent for the reasons assigned by Justice Weimer, and further dissent for the following reasons.
In my view, the majority errs in determining the Authority waived any requirements in the bidding documents[1] in awarding the contract to Yates/Landis as the lowest responsible bidder. I find the majority as well as the court of appeal impermissibly substituted their judgment for that of the trial court, which had found as a matter of fact that it "cannot say in light of the AIA requirements that the Board was wrong in its conclusion. They were not arbitrary. They may have been wrong, but they were not arbitrary." (Emphasis added). As this court has earlier declared, Louisiana "vest[s] an awarding body with discretion subject to judicial review. Courts will not substitute their judgment for the good-faith judgment of an administrative agency." Haughton Elevator Division v. State, Through Div. of Admin., 367 So.2d 1161, 1165 (La.1979). If an awarding body's administrative discretion is exercised in a fair and legal manner, then its decision should not be overturned upon judicial review. The public agency's reasonable, good faith interpretation of its own specifications should not be disturbed by a court whose views might be different. Mickey O'Connor *665 Gen. Contractor, Inc. v. City of Westwego, 01-825, p. 5 (La.App. 5 Cir. 11/27/01), 804 So.2d 128, 130; Donald Clement Contractor, Inc. v. St. Charles Parish, 524 So.2d 86, 89 (La.App. 5 Cir. 1988). In other words, a governing authority that is charged with awarding contracts pursuant to Louisiana's public bid law has the discretion to interpret the specifications it sets out in the bidding documents, and this interpretation of its own specifications should not be disturbed on judicial review absent a showing that the authority abused its discretion.
Here the public entity reviewed its bidding documents and concluded a certificate of insurance for builder's risk insurance was not required to be submitted with the bid. As Justice Weimer's dissent tellingly points out, the Authority's interpretation of its documents was supported by the language of the bidding documents. The Authority did not "waive" any requirement; nothing in the law or the bidding documents mandated the attachment of an insurance certificate or statement of insurability specifically with respect to builder's risk insurance. Broadmoor L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth., 04-211, 04-212, slip op., p. 4, 868 So.2d at 668 (Weimer, J., dissenting). Neither the omission nor inclusion of the certificate of builder's risk affects the fair and equitable means by which competing bids were evaluated to determine the lowest responsible bidder.
The Yates/Landis bid was the lowest bid. Sizeler Architects, L.L.C.[2] concluded that Yates/Landis's bid was responsible, having satisfied all of the Authority's bid requirements and specifications. After public hearings and public debate, the Authority exercised a reasonable, good faith interpretation of its own specifications, O'Connor, 804 So.2d at 130, and did not act arbitrarily or capriciously in determining Yates/Landis was the lowest responsible bidder. An action is arbitrary or capricious when there is an absence of a rational basis for the action taken. Bannister v. Dep't of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647. Notwithstanding no finding of arbitrary conduct in this case, the majority opinion leaps into a waiver discussion for a requirement not mentioned in the bid form, and takes all discretion away from the Authority in awarding the bid.
As the trial judge determined, after conducting a proper review for manifest error, there was no showing that the Authority was arbitrary in its conclusion Yates/Landis complied with the bidding documents. The Authority, as a political subdivision of the State, was entrusted with the power, inter alia, to seek public bids and to enter into contracts for the Phase IV expansion of the Ernest N. Morial Exhibition Hall. The Board is comprised of eleven members, appointed by the Governor of Louisiana and the Mayor of New Orleans. The Board consists of members who are highly respected citizens with extensive experience in the civic and business communities. It is a fundamental principle that courts will not place their judgment above that of administrative officers or boards exercising their executive functions, because of the peculiar knowledge those officers and boards possess. O'Meara v. Union Oil Co. of California, 212 La. 745, 33 So.2d 506, 509 (1947); State ex rel. Rathe v. Jefferson Parish Sch. Bd., 206 La. 317, 19 So.2d 153, 167 (1944)(on reh'g). A presumption of legality and regularity attaches to the actions of all government *666 boards. Rathe, 19 So.2d at 167. It is only when it is clearly shown that the action of such a board is beyond its authority or is arbitrary, unreasonable or fraudulent that a court is justified in interfering. Id.
Louisiana's public bid law was enacted in the interest of the taxpaying citizen and has for its purpose their protection against contracts of public officials entered into because of favoritism and possibly involving exorbitant and extortionate prices. Haughton, 367 So.2d at 1164. The public bid law ensures a level playing field whereby all bids are evaluated fairly and objectively. As a practical matter, I find it significant that Broadmoor could not articulate any advantage that allegedly accrued to Yates/Landis by the non-inclusion of a letter of insurability concerning builder's risk insurance. The inclusion of a statement of insurability did not affect the bid amount submitted. Rather, the bidder was required to calculate the cost of acquiring builder's risk insurance, because the successful bidder was required to carry and assume the cost of such insurance as required by Article 11.3.1. With regard to the bids submitted for the expansion of the convention center, the level playing field was not disturbed by Yates/Landis failure to include a letter of insurability which Broadmoor included with its bid. The bidding documents did not mandate that such a document be included with the bid; the Authority was able to compare the three bids submitted on equal terms to determine which was the lowest responsible bidder.
In conclusion, I find there was no waiver by the Authority of any substantive requirements. The Authority is a political subdivision of the State whose review of the bids and determination of its bid packet must be upheld absent a showing of an abuse of discretion. After extensive public hearings and review, the Authority made a good faith determination Yates/Landis was the lowest responsible bidder. In my view, the majority strips the Authority of its awarding discretion and impermissibly substitutes its judgment for this administrative board's good faith judgment. This ultimately results in the taxpayers paying substantially more for this project. For these reasons, I respectfully dissent.
WEIMER, J., dissenting.
As the majority opinion recognizes, the Public Bid Law of Louisiana is a prohibitory law founded on public policy, enacted in the interest of the taxpaying citizens of this State, with the express intention of protecting against favoritism, fraud, and corruption in the letting of public contracts and the exorbitant and extortionate prices extracted as a result thereof. See Boxwell v. Department of Highways, 203 La. 760, 14 So.2d 627, 631 (1943). The law has been amended several times since its inception, and each revision has evidenced a clear legislative intent that the substantive requirements of the public bid law, of the advertisement for bids, and of the bid form "shall not be waived by any public entity." LSA-R.S. 38:2212(A)(1)(b).
This prohibition against waiver furthers the public interest because it expressly prevents a public entity from specifying certain requirements in a bid and later changing those requirements to accept alternate or substitute proposals. In this sense, the law severely curtails the discretion of the public entity, thereby insuring a level playing field for all bidders and a fair and equitable means by which competing bids might be evaluated to determine the lowest responsible and responsive bidder. One bidder cannot be provided with an advantage over another bidder due to a waiver.
To the extent that the majority opinion correctly recognizes the public bid law's *667 clear and unambiguous prohibition against the waiver of bid requirements, I am in agreement with its holding. Where I diverge from the majority opinion is with its conclusion that this is a case involving waiver.
This is not a waiver case. It is a case in which the public entity examined the language in its bid packet and concluded that the relevant language did not mandate the inclusion of a certificate of insurance or statement of insurability with respect to builder's risk insurance. In other words, the public entity did not waive a substantive requirement of its bid packet; the public entity simply examined the provisions of its packet and concluded that the document did not require that a certificate of insurance or statement of insurability with respect to builder's risk insurance be submitted with the bid.
Even a cursory review of the bid requirements reveals that this interpretation was a reasonable one, supported by the plain language of the document. The bid instructions provide as follows:
Article 14INSURANCE REQUIREMENTS
14.1 Bidders shall deliver Certificates of Insurance or statement of insurability acceptable to the Owner with their bids, to demonstrate compliance with Article 11 of the Supplementary Conditions.
14.2 Failure of the Successful Bidder to deliver said Certificates of Insurance or statement of insurability with the Bid may result in the Bid being deemed incomplete and non-responsive. In the event of such failure, the Owner reserves the right to offer the Contract to the next lowest responsive Bidder or re-advertise the project to request a completely new set of bids.
This article does not specify which insurance certificates need to be included with the bid. Rather, it directs the bidder to Article 11 of the Supplementary Conditions to make that determination.
Article 11 sets forth the specific requirements for the various types of insurance coverage that must be provided. One type of coverage mandated is contractor's liability insurance. With respect to this type of insurance, Article 11.1.4.1 expressly requires that "Certificates of Insurance or Affidavit acceptable to the Owner shall be submitted to Owner with the bid, as specified in the Instructions to Bidders." (Emphasis added.)
The specific requirements with respect to builder's risk insurance are set forth in Article 11.3. Significantly, that article does not require submission of certificates of insurance with the bid.[1] In direct contrast to Article 11.1's requirement with respect to contractor's liability insurance, there is nothing in Article 11.3.1 or in any of the subsequent sections of Article 11.3 that requires evidence of builder's risk insurance to be submitted with the bid. *668 Had the Exhibition Hall Authority intended that a certificate of insurance or statement of insurability as to builder's risk insurance be submitted with the bid, it could easily have inserted the same language in Article 11.3 (the builder's risk insurance article) that it did in Article 11.1.4.1 (the contractor's liability insurance article). It did not.
In fact, the architect who prepared the bid specifications interpreted them as not requiring submission of certificates of insurance or a statement of insurability with respect to builder's risk. Ian Thompson of Sizeler Architects reviewed each of the bids received and prepared a Bid Tabulation Form for each bidder. With regard to the bid of Yates/Landis, Mr. Thompson indicated the following:
All required Insurance Certificates submitted with the bid. Builder's Risk not included, however, Builder's Risk not required to be submitted with the bid.
In Haughton Elevator Division v. State of Louisiana, 367 So.2d 1161, 1165 (La. 1979), this court explained: "Louisiana follows the general rule of vesting an awarding body with discretion subject to judicial review. Courts will not substitute their judgment for the good-faith judgment of an administrative agency. Nevertheless, an awarding body's administrative discretion must be exercised in a fair and legal manner and not arbitrarily." That rule holds true today. While the insurance requirement of the bid packet may be open to interpretation, as the trial court correctly noted, the Exhibition Hall Authority's interpretation of that requirement is not so unreasonable as to be arbitrary.
Thus, I disagree with the majority's conclusion that the failure of Yates/Landis to include a certificate of insurance or statement of insurability with respect to builder's risk insurance was a substantive deviation from the bid requirements which the Exhibition Hall Authority arbitrarily attempted to waive. Where the positive law, the advertisement for bids, or the bid form clearly and unambiguously require the attachment of certain documents (such as a certificate of insurance or statement of insurability), such a requirement cannot be waived by the awarding public entity. LSA-R.S. 38:2212(A)(1)(b). However, in this case, we have been pointed to nothing in the law or the bid specifications which requires the attachment of a certificate of insurance or statement of insurability with respect to builder's risk insurance. The Exhibition Hall Authority examined the relevant language in its bid specifications and determined that the language did not require the attachment of such documents. That interpretation is a reasonable one, supported by a plain reading of the specifications. It is not for this court to second-guess the good-faith determination of the awarding authority.
The issue regarding the builder's risk insurance is the critical issue in this case. The other issues addressed by the majoritythe lack of a resolution from the Yates/Landis joint venture and the ability of the members of the Yates/Landis joint venture to represent the joint venture at the pre-bid conferences prior to the execution of a written joint venture agreementreflect an elevation of form over substance.
The basis of the majority opinion with respect to the joint venture resolution is the ostensible failure of Yates/Landis to comply with "Addendum No. 10September 23, 2003" insofar as the Addendum differentiates between a joint venture "in the form of an entity separate from either of the venture partners," and a joint venture which "is not a separate entity." Regardless, joint ventures are generally governed by the law of partnerships. Cajun Electric Power Co-op., Inc. v. McNamara, *669 452 So.2d 212, 215 (La.App. 1 Cir.), writ denied, 458 So.2d 123 (La.1984). See Ludeau v. Avoyelles Cotton Co., Inc., 164 La. 275, 113 So. 846 (1927). Pursuant to Louisiana partnership law, each partner is deemed to be a mandatary of the partnership with authority to bind the partnership for all matters in the ordinary course of its business. LSA-C.C. art. 2814.[2]
In the instant case, rather than submit a single resolution in the name of the joint venture, Yates/Landis submitted with its bid two separate resolutionsone from each of the partners to the joint venture. The majority finds fault with this submission, holding that because the Yates/Landis Joint Venture does not dispute that it is a separate entity, a resolution from the joint venture was required. Such a requirement, however, is inconsistent with Louisiana law and is, in fact, superfluous. The majority's insistence that the submission of Yates/Landis is defective because there is no separate resolution from the joint venture is hypertechnical and, in this case, elevates form over substance. Once both entities submitted resolutions, both entities and the joint venture were bound. LSA-C.C. art. 2814. See also LSA-C.C. art. 2816.[3]
Similarly, the majority's conclusion that the Yates/Landis joint venture failed to comply with the requirement that all bidders attend two mandatory pre-bid conferences because the Yates/Landis Joint Venture agreement was not formally executed until after the pre-bid conferences were conducted ignores the fact that a joint venture agreement is not required to be in writing. In this case, as the majority acknowledges, there was evidence that the joint venture had been created prior to its existence being formalized in writing. Since joint ventures can only act through their joint venturers, and at least one of the joint venturers was present at both meetings, the substantive requirements of the bid specifications were met. To hold otherwise is to hold the parties to a hypertechnical compliance divorced from the purpose and intent of the bid requirements and of the substantive law. While the public bid law requires strict compliance with the substantive requirements of the bid form, those requirements should not be interpreted to require an essentially superfluous act.
There has been no evidence of bad faith, favoritism, fraud, or corruption in the bid process or bid award of this project. I see no reason why the Authority, after a full, complete public hearing on all the issues raised herein, should not be allowed to award the contract to the lowest responsible bidder. This court should not substitute its judgment for the good-faith judgment of the Authority.
I respectfully dissent.
*670 VICTORY, J., dissents for the reasons assigned by Justices KNOLL and WEIMER.
NOTES
[1] The Authority is governed by a 12-member Board of Commissioners, all appointed.
[2] Pursuant to a professional services contract with the Authority, Sizeler prepared the bid documents, as well as the plans and specifications used during the bid process.
[3] McDonnel/PCL did not file a protest to the bids. However, on January 29, 2004, after the court of appeal's decision was rendered, and while the writ applications were pending in this Court, McDonnel/PCL filed two separate proceedings, an injunction proceeding and a writ of mandamus proceeding, requesting the same relief sought by Broadmoor.

On February 2, 2004, Broadmoor filed a motion to consolidate McDonnel/PCL's actions with this litigation and a motion to stay those proceedings pending disposition by this Court. Alternatively, Broadmoor requested a continuance of the hearing dates for the McDonnel/PCL proceedings to permit limited discovery. The trial court granted Broadmoor's motion to consolidate and motion to stay. A contradictory hearing was set for February 4, 2004.
Subsequently, Broadmoor, the Authority, McDonnel/PCL, and Yates/Landis filed a joint motion to consolidate the McDonnel/PCL matter with this action and stay all proceedings, pending disposition of the instant matter.
[4] The interveners filed a briefs in support of Broadmoor's application for supervisory writs. The Louisiana Associated General Contractors, Inc. filed an amicus curiae brief in the court of appeal.
[5] The aforementioned intervenors also filed a briefs in this Court. The Louisiana Associated General Contractors, Inc. filed an amicus brief in support of Broadmoor's writ application in this Court. The Greater New Orleans Hotel and Lodging Association, the Louisiana Municipal Association, and the New Orleans Metropolitan Convention and Visitors Bureau, Inc. filed amicus briefs in support of the Authority and Yates/Landis' position.
[6] In this case, the trial court held a show cause hearing and ruled on the petition for a preliminary injunction. There is nothing in the record to indicate that a trial has been held on the permanent injunction.
[7] This includes comprehensive general liability, workers' compensation and employers' liability insurance, comprehensive automobile liability, watercraft liability and an umbrella policy.
[8] Many construction contracts provide for the procurement of builders' risk insurance to provide funds for the completion of the work in the event of a catastrophe. This insurance is a unique form of property insurance in that it typically covers only projects under construction, renovation, or repair. Builders' risk insurance insures against accidental losses, damages or destruction of property for which the insured has an insurable interest.
[9] LSA-R.S. 38:2220 provides:

A. Any purchase of materials or supplies, or any contract entered into for the construction of public works, contrary to the provisions of this Part shall be null and void.
B. The district attorney in whose district a violation of this Part occurs, the attorney general, or any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunctive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.
C. Where a judgment of nullity is rendered in any action brought by a district attorney or by the attorney general pursuant to Subsection B of this Section the district court may award a civil penalty not in excess of fifty thousand dollars against each offending member of the governing authority of the public entity who authorized the violation.
[10] The Yates Construction resolution confirmed that William Yates was authorized to execute bids on behalf of Yates Construction, and the Landis resolution attested that James C. Landis was authorized to execute bids on behalf of Landis Construction.
[1] Article 4, Section 4.5 of the bid instructions provides, "Should there be any discrepancy between any of the information contained in these Documents, the more stringent requirement(s) shall govern."
[1] "Bidding documents" means the bid notice, plans and specifications, bidding form, bidding instructions, addenda, special provisions, and all other written instruments prepared by or on behalf of a public entity for use by prospective bidders on a public contract. La.Rev.Stat. 38:2211 A(1).
[2] Sizeler's responsibilities included preparing the bidding documents as well as reviewing and evaluating all bids received.
[1] Article 11.3.1 states:

The Contractor shall carry and assume the cost of insurance on a Completed Value form against perils of fire and extended coverage and shall include "all risks" (as defined in the policy form) insurance for physical loss or damage in the amount equal to the Contract Sum. Flood and Earthquake perils are to be insured in amounts not less than Ten Million Dollars ($10,000,000). Transit exposures are also to be insured with limits equaling one hundred percent (100%) of the transit exposure. The insurance shall provide coverage including fees of Architects and Engineers necessary to be incurred in repairs or reconstruction of the work to be conducted under the Contract. If any, delete "occupancy" and "increase in hazard" clauses. Form shall be Completed Value. The Contractor, Subcontractors of all tiers, and the Owner are to be insured on all insurance provided under this subparagraph 11.3.1.
[2] LSA-C.C. art. 2814. Partner as mandatary of the partnership.

A partner is a mandatary of the partnership for all matters in the ordinary course of its business other than the alienation, lease, or encumbrance of its immovables. A provision that a partner is not a mandatary does not affect third persons who in good faith transact business with the partner. Except as provided in the articles of partnership, any person authorized to execute a mortgage or security agreement on behalf of a partnership shall, for purposes of executory process, have authority to execute a confession of judgment in the act of mortgage or security agreement without execution of the articles of partnership by authentic act.
[3] LSA-C.C. art. 2816. Contract by partner in his own name; effect on the partnership.

An obligation contracted for the partnership by a partner in his own name binds the partnership if the partnership benefits by the transaction or the transaction involves matters in the ordinary course of its business. If the partnership is so bound, it can enforce the contract in its own name.