MADELEINE M. LANDRIEU; Judge.
_JjThe plaintiffs, Raymond Meladine, his wife and children (“the Meladines”), appeal the trial court’s granting of summary judgment in favor of Jefferson Lake Sulphur Company (“Jefferson Lake”), dismissing with prejudice their claims against this sole remaining defendant. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
Approximately fifteen years ago, on March 22, 2001, the Meladines were fishing in the early morning hours when their boat struck an unknown object submerged beneath Lake Hermitage. On March 21, 2002, the Meladines filed a personal injury suit against six companies alleging each was the “owner and/or operator of an oil *744 and gas production: platforms and pipelines located in the Lake Hermitage area, Plaquemines Parish, Louisiana [sic].”. The plaintiffs further alleged that their eighteen foot boat had allided with what they believed to be an unmarked, old gas pipeline, and that'the defendants were liable for failing to mark, inspect, maintain, and/or remove this pipeline or to warn of the hazard posed by it. The original six defendants were Stone Energy Corporation, Hilcorp Energy |2Company, Occidental Petroleum Corporation, Exxon Mobil Pipeline Company, Gulf Oil Corporation and Jefferson Lake, the appellee here. All these defendants denied having any ownership interest or control of the object the plaintiffs had allegedly struck.. By Mareh of 2005, the plaintiffs had voluntarily dismissed without prejudice their claims against all six original defendants except Stone Energy and Chevron USA (the successor to Gulf Oil).[1]
On February 21, 2007, in a supplemental and amending petition, the plaintiffs renamed Jefferson Lake as a defendant, again alleging it owned and/or operated the pipeline, and also named the Plaque-mines Parish Government (“PPG”), alleging it was liable as the owner of the water bottom.
In 2008, Jefferson Lake filed an exception of prescription, arguing that it was not renamed as a defendant until six years after the.accident. Jefferson Lake additionally argued that the original petition did not interrupt prescription because there was no solidary liability between Jefferson Lake and any of the originally named defendants. The trial court initially granted the exception of prescription. Then, on May 5, 2009; the trial court granted the plaintiffs’ motion for new trial, vacated its prior judgment, and deferred the exception of prescription to the trial on the merits.
On April 2, 2015, Jefferson Lake filed the motion for summary judgment at issue here. In its motion, Jefferson Lake asserted that the plaintiffs’ claims against Lit are prescribed because the plaintiffs cannot show either that Jefferson Lake had ownership/control of the pipeline or that Jefferson Lake was solidarity liable with an originally named defendant. The trial court heard the motion: on April 7, 2015 and took it under advisement. On May 1, 2015, the plaintiffs settled with and dismissed' their claims against PPG, leaving Jefferson Lake as the sole remaining defendant. On May 7, 2015, the trial court granted-Jefferson Lake’s motion for summary judgment. The plaintiffs now appeal that judgment.
STANDARD OF REVIEW
Appellate courts review summary judgments de novo, using the samé criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Burrows v. Executive Prop. Mgmt. Co., 2013-0914, pp. 5-6 (La.App. 4 Cir. 3/12/14); 137 So.3d 698, 702 (citations omitted). At the time Jefferson Lake filed its motion, Louisiana Code of Civil Procedure Article 966 B(2) provided that summary judgment “shall be rendered forthwith if the pleádings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.”[2] *745 The article further provided: “[I]f the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require Rhim to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.”[3]
DISCUSSION
In this case, the timely filing of the Meladines’ original petition interrupted prescription against Jefferson Lake, which was named as a defendant. That interruption ceased, however, when the plaintiffs voluntarily dismissed their claims against Jefferson Lake. Louisiana Civil Code article 3463 provides that such an interruption continues as long as the suit is pending but “is considered never to have occurred” if the plaintiff voluntarily dismisses the action. Jefferson Lake was not renamed as a defendant until 2007, six years after the accident in question. Because the applicable prescriptive period is one year from the date the injury or damage is sustained, the 2007 supplemental and amending petition is prescribed on its face. See La. C.C. art-. 3492.
As the trial court indicated when it deferred the exceptidn of prescription to the merits, the -action against Jéfferson Lake is prescribed unless it is proved at trial that Jefferson Lake is solidarily hable with one of the originally-named defendants.[4] After 'this ruling, Jefferson Lake moved for summary judgment on | ¿¡the basis that the plaintiffs cannot prove the existence of a solidary obligation between Jefferson Lake and an originally named defendant. The burden then shifted to the plaintiffs to produce, evidence sufficient to establish that they will be able to satisfy their evidentiary, burden at trial.[5] To meet their burden at trial, the plaintiffs first would have to prove that Jefferson Lake, itself, had ownership or control of the submerged pipe struck by the plaintiffs’ boat such that it had a duty to mark, remove, or warn of it.[6] Secondly, to defeat prescription, the plaintiffs would have to show that Jefferson Lake’s obligation with regard to the pipeline was a solidary obligation also borne by Gulf Oil.[7]
In opposition to the motion for summary judgment, the plaintiffs submitted-the-deposition testimony of Captain Larry Tillot-son, which they argue raises a genuine issue of fact as to Jefferson Lake’s ownership/control of the pipeline. The plaintiffs also submitted a “Sulphur Agreement” and “Assignment of Sulphur Rights” between *746 Jefferson Lake and Gulf Oil executed in 1966, and the contract terminating those in 1972 (collectively referred to as “the Agreement). The plaintiffs argue that the Agreement evidences a joint venture and therefore raises a genuine issue of fact as to the existence of a solidary obligation between Jefferson Lake and Gulf Oil. We find no merit in the plaintiffs’ arguments.
Captain Tillotson testified that sometime in the 1970’s after Jefferson Lake had concluded its sulphur operations, he saw a stack of “drill pipe” on the shore of Lake Hermitage. The land upon which the pipe was stacked was eventually, within fifteen years, completely submerged by water due to coastal erosion. Captain Tillotson stated that he did not know to whom the drill pipe belonged or who had put it on the shore. He also did not know exactly where the Meladines’ accident had occurred. We find Captain Tillotson’s testimony to be too speculative to suggest any connection between Jefferson Lake and the object struck by the plaintiffs’ boat. This evidence is not sufficient to raise a genuine issue of fact as to whether Jefferson Lake had any duty to the plaintiffs with regard to that object.
The second piece' of evidence submitted in opposition to Jefferson Lake’s motion is The Agreement. The Agreement is the temporary assignment of a portion of a mineral lease. Gulf Oil, which held a fifty percent share of the mineral rights as a mineral lessee, assigned its rights to drill for and produce sulfur only on the subject property from 1966 to 1972 (presumably in the same area where the pipe was struck in 2001). La. R.S. 31:114 defines a mineral lease as “a contract by which the lessee is granted the right to explore for and produce minerals.” Mineral leases are governed by the provisions of the Civil Code applicable to ordinary leases. State v. Louisiana Land and Exploration Co., 2012-0884, p. 9 (La.1/30/13), 110 So.3d 1038, 1045. A mineral lease is not a joint venture. Under Louisiana law, a joint venture is analogous to a partnership and is governed by partnership law. Broadmoor, L.L.C. v. Ernest N. Mortal New Orleans Exhibition Hall Auth., 2004-0211, p. 18 (La.3/18/04); 867 So.2d 651, 663.
The Agreement presented here merely gives Jefferson Lake the authority to drill for sulphur in lieu of Gulf Oil; it does not provide that the.two are partners or that they intend to work together. It does not indicate the existence of a joint venture. Nothing contained in the Agreement suggests that Gulf Oil and Jefferson |7Lake had a solidary obligation as to the pipeline in question. There is no evidence to indicate that the pipeline was used for sulphur as opposed to gas, or that the pipeline was owned or controlled by either Jefferson Lake or Gulf Oil. The Agreement does not raise a genuine issue of fact as to the existence of solidary liability between Jefferson Lake and Gulf Oil.
Because none of the evidence produced in opposition to Jefferson Lake’s motion raises a genuine issue of material fact sufficient to preclude summary judgment, the trial court correctly granted the motion.
CONCLUSION
We affirm the trial court’s granting of summary judgment dismissing the Mela-dines’ claims against Jefferson Lake.
AFFIRMED
LOVE, J., dissents.
BELSOME, J., dissents with reasons.

. The record reflects that the plaintiffs subsequently settled with these two defendants and dismissed them with prejudice.

. " La. C.C.P. art'. 966 was' amended by La.- Acts 2015, No. 422, § 1, effective January 1, 2016. The Act expressly provides that its provisions shall not apply to any motion for summary *745 judgment pending adjudication or appeal on the effective date. La. Acts 2015, No. 422, § 2. The amendments are not pertinent to this appeal.

. See footnote 2, supra.

. Interruption of prescription against one sol-idary obligor or joint tortfeasor is effective against all solidary obligors and joint tortfea-sors. See La. C.C. arts. 1799, 2324 C, 3503; Williams v. Sewerage and Water Bd. of New Orleans, 611 So.2d 1383, 1386 (La.1993).

. See La. C.C.P. art. 966

. To prevail at trial, the plaintiffs would also have to show that Jefferson Lake breached its duty causing their damages.

. Gulf Oil is the only original defendant that the plaintiffs contend was a solidary obligor with Jefferson Lake.