HUGHES, J.
RThis is an appeal of a judgment that granted a request for preliminary injunc-tive relief, permanent injunctive relief, declaratory relief, and mandamus in favor of plaintiff/appellee, Grady Crawford Construction, Inc. (Crawford), ordering that defendants/appellants, the City of Baton Rouge and the Parish of East Baton Rouge (collectively, Baton Rouge) award the contract at issue to Crawford. RMD Holdings, Ltd. (RMD), intervenor/appel-lant, and Baton Rouge appeal the judgment. For the reasons that follow, we affirm.
FACTS AND PROCEDURAL HISTORY
On June 18, 2010 Baton Rouge first published a “Notice to Contractors” soliciting bids for Project Number 09-PS-BD-0037, known as “Standby Generator Installations for Sewer Lift Stations.” The notice to contractors stated that “for bidding, Contractors must hold an active license issued by the Louisiana State Licensing Board for Contractors in the classification of ‘Municipal and Public Works Construction’.” (Emphasis added.) Bids were to be submitted prior to 2:00 p.m. on July 29, 2010. RMD and Crawford submitted bids for the project. RMD was the lowest bidder but was not approved for the “Municipal and Public Works Construction” classification until sometime on the day of the bid opening, during a meeting of the Louisiana State Licensing Board for Contractors (the Licensing Board.)
Nevertheless, on August 11, 2010 the Baton Rouge Metropolitan Council (Metro Council) voted to award the contract to *516 RMD.[1] Crawford filed suit for a temporary restraining order and injunctive relief, seeking to enjoin Baton Rouge |3from awarding the project to RMD, and for a declaratory judgment and mandamus, seeking to declare Crawford the lowest, “responsive bidder”[2] and to be awarded the project. Crawford alleged that RMD was not a “responsive bidder” because at the time that it submitted its bid it did not hold an active license with a “Municipal and Public Works Construction” classification. Following a hearing, the trial court rendered judgment in favor of Crawford. RMD and Baton Rouge appeal.
RMD, in its assignments of error, alleges that the trial court erred: in conducting a de novo review of an agency decision as opposed to applying the arbitrary and capricious standard of review; in placing the burden of proof on Baton Rouge, the defendant, and RMD, the intervenor, instead of Crawford; in admitting a digital recording of the Licensing Board’s meeting of July 29, 2010 for the purpose of establishing the time of the approval of RMD’s license classification; and in finding that Crawford supported its claims by a preponderance of the evidence.
Baton Rouge also alleges that the trial court erred: in issuing a permanent injunction where the rights to that injunction had not been proved by a preponderance of the evidence; in failing to give deference to the Metro Council’s determination that RMD’s bid was in compliance with the bid requirements; and in substituting its own judgment for the “good faith reasonable” judgment of the Metro Council.[3]
|4LAW and analysis
The primary issue to be resolved in this appeal is whether RMD was a “responsive bidder,” given the fact that it was not approved for the “Municipal and Public Works Construction” classification on its general contractor’s license when its bid was submitted.
I. Evidentiary Errors
RMD alleges that the trial court erred in admitting the audio recording of the meeting of the Licensing Board for the purpose of establishing the time that RMD’s application for an additional classification to its license was approved. We address alleged evidentiary errors first on appeal and note that the trial court is *517 granted broad discretion in its evidentiary rulings and its determinations will not be disturbed on appeal absent a clear abuse of that discretion. Wright v. Bennett, 2004-1944 (La.App. 1st Cir.9/28/05), 924 So.2d 178, 182-83, citing Turner v. Ostrowe, 2001-1935 (La.App. 1 Cir. 9/27/02), 828 So.2d 1212, 1216, writ denied, 2002-2940 (La.2/7/03), 836 So.2d 107.
We emphasize that it is clear from the transcript of the trial and from RMD’s brief that RMD’s objection was not to the admissibility of the audio recording as a recording of the meeting, but only as to its admissibility as a time-keeping device. Under LSA-C.E. art. 803(6), “[a] memorandum, report, record, or data compilation, in any form, ... made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness” are not excluded by the hearsay rule and are admissible in court. | BAt the trial of the matter, RMD called Ms. Kris Fitch to testify. She stated that, among other duties, she is the custodian of records for the Licensing Board and that she personally attended the meeting on July 29, 2010. She stated that it was the regular business practice of the Licensing Board to record the hearings. She further testified with certainty that the meeting began at 9:30 a.m., the recording was started at that time, and the recording ran “straight through” the meeting continuously from start to finish. She explained that the audio is first recorded onto a server and then a CD recording is made for the “official document.”
We find no clear abuse of discretion by the trial court in admitting the audio recording into evidence. In regard to what weight the trial court gave to its ability to evidence the length of the meeting, we conclude that issue to be a fact question for the trier-of-fact and therefore subject to the manifest error standard of review. Because we find that a reasonable basis exists for the inference that RMD’s additional license classification was not awarded until after 2:00 p.m., based on the recording, we will not disturb that finding. This assignment of error lacks merit.
II. Standard of Review
The basic statutory law governing this case is contained in LSA-R.S. 38:2211, et seq., Louisiana’s Public Bid Law, which provides that public work projects exceeding the sum of $150,000 be advertised for bid and that the contract be awarded to the “lowest responsible bidder.” See LSA-R.S. 38:2212(A)(l)(a) and (d). The Public Bid Law is a prohibitory law founded on public policy and the legislature has specifically prescribed the conditions upon which it will permit public work to be done on its behalf or on behalf of its political subdivisions. Broadmoor, L.L.C. v. Ernest N. Mortal New Orleans Exhibition Hall Authority, 2004-0211 (La.3/18/04), 867 So.2d 651.
“It is well settled under Louisiana law that the judicial branch may not ordinarily enjoin a municipal body from acting under the guise of its legislative 16powers.” La. Associated Gen. Contr., Inc. v. Calcasieu Parish School Bd., 586 So.2d 1354, 1359 (La.1991). However, where the threatened action of a municipal body is in direct violation of a prohibitory law, a court of equity may enjoin the threatened action. La. Associated Gen. Contr., Inc., 586 So.2d at 1359. A political *518 entity has no authority to take any action which is inconsistent with the Public Bid Law. La. Associated Gen. Contr., Inc., 586 So.2d at 1362.
Louisiana Revised Statutes 38:2212 A(l)(b)(i), contained within the Public Bid Law, states “[t]he provisions and requirement of this Section, those stated in the advertisement for bids, and those required on the bid form shall not be waived by any entity.” In a discussion of an earlier version of LSA-R.S. 38:2212 A(l)(b), the Louisiana Supreme Court has recognized that:
As it stands now, the Authority [agency] cannot waive any requirements contained in its bid requirements. The language of LSA-R.S. 38:2212(A)(l)(b) is clear and unambiguous: when a public entity elects to place certain requirements in its advertisements for bids and on its bid forms, that entity is bound by those requirements and may not choose to waive them at a later date.
Broadmoor, 867 So.2d at 657.
The then Chief Justice Calogero concurred and pointed out that “[t]here is no level playing field for the bidders on public projects unless all of them are required to comply with the bid documents.” Broadmoor, 867 So.2d at 664. Justice Weimer dissented but agreed with the majority “to the extent that the majority opinion correctly recognizes the public bid law’s clear and unambiguous prohibition against the waiver of bid requirements.” Broadmoor, 867 So.2d at 666-67.
Therefore, if it is concluded that the language of the bid advertisement (the “Notice to Contractors”) required that, at the time of the submission of its bid, the bidder must have already held an active license with the proper classification, the 17entity had no authority to waive that requirement and in doing so, acted in excess of its statutory authority and outside of its discretionary authority.
III. The Classification Requirement
The “Notice to Contractors” stated that:
... bids will be received until 2:00 p.m. Local Time, THURSDAY, JULY 22, 2010, ... No bids will be received after 2:00 p.m. on the same day and date [July 22, 2010].
[A]fter the bid closing time all electronic bids will be downloaded and publicly read aloud along with all paper bids received, if any, in Room 312 of the Municipal Building immediately after the 2:00 p.m. bid closing.
All Contractors bidding on this work shall comply with all provisions of the State Licensing Law for Contractors, R.S. 37:2150-2163, as amended, for all public contracts. It shall also be the responsibility of the General Contractor to assure that all subcontractors comply with this law. If required for bidding, Contractors must hold an active license issued by the Louisiana State Licensing Board for Contractors in the classification of “Municipal and Public Works Construction” and must show their license number on the face of the bid envelope and the Uniform Public Works Bid Form.
On July 16, 2010 the Baton Rouge Department of Public Works, Sewer Engineering Division, issued an “Addendum No. 1” to all prospective bidders. The addendum stated:
Acting in accordance with Louisiana Revised Statutes 38:2212, (C)(2)(a), the bid opening date is postponed by seven (7) calendar days. Bids will be opened at 2:00 P.M. Thursday, July 29, 2010 in
*519 Room 312 of the Municipal Building,[4] in lieu of at 2:00 P.M. on July 22.2010 in Room 312 of the Municipal Building.
|sThe “Notice to Contractors” requires that bidding contractors comply with all provisions of the “State Licensing Law for Contractors, R.S. 37:2150-2168.” We find the following provisions of LSA-R.S. 37:2153 applicable to this case:
A. The board shall have the power to make by-laws, rules and regulations for the proper administration of this Chapter; to employ such administrative assistants as are necessary; and to fix their compensation. The board is hereby vested with the authority requisite and necessary to carry out the intent of the provisions of this Chapter.
B. Any bylaws or rules or regulations enacted by the Board shall be adopted and promulgated pursuant to the provisions of R.S. 49:951 et seq.
Pursuant to that power, the board promulgated the “Professional and Occupational Standards for Contractors,” found in the Louisiana Administrative Code, Title 46, Part XXIX. Rule 1103(A) states that:
All licensed contractors bidding in the amount of $50,000 or more shall be required to have qualified for the classification in which they bid. (Emphasis added.)
Additionally, LSA-R.S. 37:2163 states, in pertinent part, that:
A. (1) It is the intent of this Section that only contractors who hold an active license be awarded contracts either by bid or through negotiation. All architects, engineers, and awarding authorities shall place in their bid specifications the requirement that a contractor shall certify that he holds an active license under the provisions of this Chapter and show his license number on the bid envelope. In the case of an electronic bid proposal, a contractor may submit an authentic digital signature on the electronic bid proposal accompanied by the contractor’s license number in order to meet the requirements of this Paragraph. Except as otherwise provided herein, if the bid does not contain the contractor’s certification and show the contractor’s license number on the bid envelope, the bid shall be automatically rejected, shall be returned to the bidder marked “Rejected”, and shall not be read aloud. (Emphasis added.)
It was stipulated at the trial that the sewer project is a public work and subject to the Public Bid Law. The advertisement for bids clearly requires the contractors to comply with all provisions of the State Licensing Law for Contractors. Because the “Notice to Contractors” required that all bidding |flcontractors must hold an active license in the classification of “Municipal and Public Works Construction” and all bids must be received by 2:00 p.m., July 29, 2010, we conclude that the mere submission of an application to the Licensing Board for said classification is insufficient. Rather, we conclude that the contractor must have actually “held” the “Municipal and Public Works Construction” classification at the time its bid was submitted.
IV. Burden of Proof
We now address whether Crawford met its burden of proof to establish that *520 RMD did not possess the requisite classification at the time its bid was submitted. At the trial of this matter, Crawford called two witnesses: Ms. Kris Fitch, the record custodian, public information officer, and confidential assistant to the executive director for the Licensing Board, and Mr. Bryan Harmon, the Deputy Director of Public Works for the Department of Public Works. Crawford also submitted the “Notice to Contractors,” along with Addendum No. 1 and the audio recording of the July 29, 2010 meeting of the Licensing Board.
Mr. Harmon testified that the sewer project was under his direct supervision and that he determined that the job required the “Municipal and Public Works Construction” classification. The following colloquy took place at trial:
Q. WOULD IT BE FAIR TO SAY THEN THAT CONTRACTORS WHO CHOSE TO BID ON THIS PARTICULAR PROJECT WERE REQUIRED TO BE LICENSED BY THE CONTRACTORS LICENSING BOARD AND WERE REQUIRED TO BE LICENSED IN THE CLASSIFICATION OF MUNICIPAL AND PUBLIC WORKS CONSTRUCTION?
A. YES, THEY WERE.
Q. AM I CORRECT THEN IN ASSUMING THAT IF A CONTRACTOR CHOSE TO SUBMIT A BID AT THE TIME OF THE BID OPENING WHO DID NOT POSSESS THE REQUISITE CLASSIFICATION AND LICENSE, THAT BID WOULD HAVE BEEN REJECTED?
A. YES.
Jj/
Q. SO IT WOULD BE FAIR TO SAY THAT BIDS HAD TO BE SUBMITTED BY PROPERLY LICENSED CONTRACTORS WITH THE CORRECT CLASSIFICATION PRIOR TO 2:00 P.M. ON JULY 29, 2010?
A. CORRECT.
The audio recording of the meeting introduced by Crawford at the trial was authenticated by Ms. Kris Fitch, the custodian of records in charge of the recording. Ms. Fitch testified that she personally attended the meeting on July 29, 2010. She testified that the meeting began promptly at 9:30 a.m. and that there were no breaks or executive sessions at that meeting that would have required an interruption of the recording. As such, she stated with certainty that the audio recording began at 9:30 a.m. and recorded continuously from the beginning of the meeting “straight through” to the end. Counsel offered the recording to the court. According to the recording, the meeting lasted five hours and 2 minutes and the approval of RMD’s license classification occurred exactly four hours and fifty-four minutes into the recording, or at 2:24 p.m.
We interpret the language in Rule 1103(A) to require that the contractor must have qualified, and the classification must have been obtained, prior to the bid opening. Pursuant to LSA-R.S. 37:2163(A)(1), the bid must contain the contractor’s certification. This language can only be interpreted to mean that the required classification has been previously obtained at the time the bid is submitted. The evidence establishes by a preponderance that these requirements were not met in this case.
Because the meeting of the Licensing Board was proceeding simultaneously with the bid opening and the evidence supports the claim that the application for the additional classification was not approved until after the bid opening, it was impossible for RMD to hold an active license with the *521 requisite classification at the Intime its bid was submitted. Therefore, RMD’s bid was not “responsive,” was statutorily impermissible, and was required to be rejected.[5]
CONCLUSION
For the reasons assigned herein, the judgment of the trial court is affirmed. All costs of this appeal are assessed to the intervenor, RMD Holdings, Ltd., and the defendants, the City of Baton Rouge and the Parish of East Baton Rouge, equally.
AFFIRMED.
PARRO, J., concurs.

. After the bids were opened, in an effort to confirm RMD’s qualifications, Bryan Harmon, the Deputy Director of Public Works for the Baton Rouge Department of Public Works, checked the Licensing Board’s website regarding . RMD’s license and required classification. Because the website did not indicate that RMD possessed the proper classification, RMD was notified that its bid appeared non-responsive. However, after contacting the Licensing Board directly and learning that RMD’s license classification was approved "effective July 29, 2010,” the day the bids were opened, Mr. Harmon then determined that RMD’s bid was responsive.

. Title 34, Part I, Section 527(B) of the Louisiana Administrative Code defines a "responsive bidder” as "a person who has submitted a bid under R.S. 39:1594 which conforms in all substantive respects to the invitation for bids including the specifications set forth in the invitation.”

.RMD and Baton Rouge both urge that deference is owed to the discretionary decision of the Metro Council in awarding the contract to RMD. However, under the provisions of the Public Bid Law, "... any interested party may bring suit in the district court through summary proceeding to enjoin the award of a contract or to seek other appropriate injunc-tive relief to prevent the award of a contract which would be in violation of this Part, or through ordinary proceeding to seek appropriate remedy to nullify a contract entered into in violation of this Part.” LSA-R.S. 38:2220(B). The district court is thus exercising its original jurisdiction and not acting as a court of review of an administrative decision.

. While the language of Addendum No. 1 clearly states that the date of the opening of bids was postponed by a week, the deadline for receiving bids was not specifically extended. However, it appears from the record, briefs, and arguments of counsel that all parties agree that the bid submission deadline was also postponed.

. It was stipulated that Crawford's bid was “responsive” and was the second lowest bid. Therefore, the award of the contract to Crawford was proper.