STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2019 CA 0857

CORE CONSTRUCTION SERVICES, L.L.C.

VERSUS

STATE OF LOUISIANA, DIVISION OF ADMINISTRATION, DEPARTMENT
OF FACILITY PLANNING AND CONTROL

*Consolidated with*

NUMBER 2019 CA 0858

J. CALDARERA & COMPANY, INC.

VERSUS

STATE OF LOUISIANA, DIVISION OF ADMINISTRATION, THROUGH ITS
DEPARTMENT OF ADMINISTRATION, OFFICE OF FACILITY PLANNING
AND CONTROL

**Judgment Rendered:** AUG 0 5 2020

* * * * * *

Appealed from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Suit Numbers C677958 c/w 678284

Honorable Todd W. Hernandez, Presiding

* * * * * *

Steven B. Loeb
Jacob E. Roussel
Baton Rouge, LA

Jason C. Bruzik
Metairie, LA

Counsel for Plaintiff/2nd Appellant
CORE Construction Services, L.L.C.

Daniel A. Ranson
Ryan C. Higgins
Gretna, LA

Counsel for Plaintiff/1st Appellant
J. Caldarera & Company, Inc.

Thomas W. Darling
Laura W. Christensen
Baton Rouge, LA

John W. Waters, Jr.
New Orleans, LA

Bridget B. Denicola                    Counsel for Defendant/Appellee
Matthew J. Darouse                     State of Louisiana, Division of
Baton Rouge, LA                        Administration, Office of Facility
                                       Planning and Control

Christopher K. LeMieux                 Counsel for Intervenor/Appellee
John W. Bihm                           Woodward Design + Build, LLC
New Orleans, LA

\* \* \* \* \* \*

BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.

---

[1] Judge William J. Burris, retired, serving *pro tempore* by special appointment of the Louisiana Supreme Court.

2

**GUIDRY, J.**

In this public bid dispute, plaintiffs, CORE Construction Services, L.L.C. (CORE) and J. Caldarera & Company, Inc. (Caldarera), appeal from a trial court judgment denying their claims for declaratory judgment, writ of mandamus, damages, and attorney's fees and dismissing their claims with prejudice.[2] For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The State of Louisiana, Division of Administration, Office of Facility Planning and Control (State), solicited bids for a project identified as "MEB and CSRB Permanent Repairs & Mitigation of Building Functions and Critical MEP Systems & Equipment Restoration of Main Campus Louisiana State University Health Sciences Center New Orleans, Louisiana" pursuant to the Louisiana Public Bid Law, La. R.S. 38:2212, *et seq.* The State received bids on November 29, 2018 from five contractors, including CORE, Caldarera, Woodward Design + Build, LLC (Woodward), the McDonald Group, and Citadel Builders. According to the bid tabulation sheet, Caldarera submitted the apparent lowest bid for the project, Woodward submitted the second lowest bid, and CORE submitted the third lowest bid.

The State informed Caldarera that it had submitted the apparent low base bid to serve as the general contractor on the project, and that it intended to award the contract to Caldarera. However, on December 3, 2018, the State advised Caldarera that its bid was being rejected as non-responsive due to its failure to state the

---

[2] The trial court judgment also denied their requests for preliminary, permanent, and mandatory injunction. However, neither CORE nor Caldarera seek review of those rulings on appeal, as work has commenced under the State's contract with the successful bidder, Woodward Design + Build, LLC, and therefore, the act sought to be enjoined, *i.e.*, award of the contract to another bidder and taking action in furtherance of the award including proceeding with any work on the project, has been accomplished, rendering an appeal of the denial of injunctive relief moot. See Tobin v. Jindal, 11-0838, p. 5 (La. App. 1st Cir. 2/10/12), 91 So. 3d 317, 321.

amount of a Siemens Section 16727 Fire Detection and Alarm System in figures as instructed on the unit price form.

On December 13, 2018, the State sent to all parties involved copies of all bids submitted for the project and the bid tabulation sheet. CORE thereafter sent several letters to the State protesting the award of the project to any bidder other than CORE.

CORE subsequently filed a Petition for Preliminary and Permanent Injunction, Mandatory Injunction, Alternatively Declaratory Judgment and Damages on January 4, 2019. In its petition, CORE acknowledged the lowest numerical bid submitted by another contractor, i.e., Caldarera, had been rejected as non-responsive. CORE asserted that the second lowest numerical bid, submitted by Woodward, was also non-responsive because: the bid incorrectly identified the name of the entity submitting the bid as "Woodward Design + Build, LLC, a Louisiana Limited Liability Company" and as such, violated the Louisiana Contractor's Licensing Law; there is no company registered with the Louisiana Secretary of State by the name identified on the bid form and the name violates La. R.S. 12:1306; the bid form incorrectly identifies the name of the entity submitting the bid and, therefore, the certification of authority submitted by Woodward was inconsistent with the bid form; and the bid bond fails to identify the proper name of the project. As such, CORE asserted that because Woodward's bid is non-responsive, it should be rejected, and that as the lowest responsive bidder, CORE is the proper party entitled to receive the award of the contract. CORE sought injunctive relief preventing the State from taking any action in furtherance of any award of the contract for the project to any bidder other than CORE; declaratory judgment that any contract awarded and/or entered into between the State and any bidder other than CORE is null and void and that CORE is the lowest responsive and responsible bidder, thereby entitling CORE to the award of contract for the

4

project; mandatory injunction requiring the State to award and sign the contract for the project with CORE without further delay; judgment in favor of CORE awarding attorney fees in bringing this action; and alternatively, judgment in favor of CORE awarding damages, including, but not limited to, lost profits, bid preparation costs, attorney's fees, interest, and costs.

On January 9, 2019, the State sent a letter to Woodward identifying Woodward as the successful bidder on the project.

Thereafter, Caldarera filed a Petition for Temporary Restraining Order, Preliminary Injunction and/or Permanent Injunction, Declaratory Judgment, and Writ of Mandamus or Alternatively, for Damages. Caldarera asserted that the provision in the Instructions to Bidders regarding unit prices does not apply to the bid at issue, because the price for the Siemens Fire Detection and Alarm System is not a true unit price. Caldarera also asserted that the State violated the Public Bid Law by misinterpreting its own definition of "unit price" in review of Caldarera's bid and by failing to award the contract to Caldarera as the lowest responsive and responsible bidder. Caldarera sought a temporary restraining order and a preliminary and/or permanent injunction preventing the State from awarding or executing a contract with anyone other than Caldarera; a writ of mandamus directing the State to award the contract for the project to Caldarera or alternatively, for judgment in favor of Caldarera for its anticipated profit for the project and its cost to prepare the bid, together with interest and attorney's fees.

Woodward intervened in both suits, and the two matters were subsequently consolidated.[3] Thereafter, Woodward filed a Motion in Limine seeking to exclude the opinion testimony of Joe Caldarera, the President and CEO of Caldarera.

---

[3] The CORE suit was allotted to Division A while the Caldarera suit was allotted to Division O. Woodward filed a Consent Motion to Transfer for the Purpose of Consolidation, requesting that the court transfer the Caldarera lawsuit from Division O to Division A, the division of the first-filed suit for consolidation of the matters. The trial court signed an order of transfer on January 25, 2019.

Woodward asserted that at his deposition, Joe Caldarera repeatedly attempted to offer expert legal opinions about the Public Bid Law and the advertised bid documents for this project, all of which are issues within the purview of the trial court, and that the trial court will not benefit from his testimony.

The trial court held a trial on the consolidated matters on February 19, 2019. The parties stipulated that the court's ruling would apply to CORE and Caldarera's requests for preliminary and permanent injunction as well as their requests for mandamus and declaratory relief. Damages and attorney's fees were reserved for another day. At the beginning of trial, the trial court took up Woodward's Motion in Limine, which was joined by CORE. After hearing argument from counsel, the trial court granted the motion, finding that anyone's intent or interpretation regarding what was submitted and what was not submitted is not relevant to the issue of the responsiveness of the bids, as the documents that were submitted and stipulated to by the parties speak for themselves. The parties agreed that Caldarera would proffer Joe Caldarera's deposition at a later date.[4]

The parties thereafter submitted testimony and evidence on the merits, and the trial court took the matter under advisement. On March 7, 2019, the trial court issued a written ruling denying the relief sought by CORE and Caldarera. Specifically, the trial court found that the Instructions to Bidders required with specificity what was required of bidders in order for bids to be considered responsive and that Caldarera's bid is non-responsive. Additionally, with regard to Woodward, the trial court found that failing to type its official name on the bid as it appears on its contractor's license is not a violation of the Public Bid Law or the advertised Instructions to Bidders. Thereafter, on March 29, 2019, the trial court signed a judgment in conformity with its ruling, denying CORE and Caldarera's

_____

[4] The record was subsequently supplemented with the deposition and attachments on April 15, 2019.

6

claims for relief and dismissing their claims with prejudice. CORE and Caldarera now appeal from the trial court's judgment.

## DISCUSSION

### Applicable Law

Louisiana's Pubic Bid Law, set forth in La. R.S. 38:2212, *et seq.*, is a prohibitory law founded on public policy. Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority, 04-0211, 04-0212, p. 6 (La. 3/18/04), 867 So. 2d 651, 656. Pursuant to the Public Bid Law, the legislature has specifically prescribed the conditions upon which it will permit public work to be done on its behalf or on behalf of its political subdivisions. The statute was enacted in the interest of the taxpaying citizens and has for its purpose the protecting of them against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices. Broadmoor, 04-0211 at p. 6, 867 So. 2d at 656; Hamp's Construction, L.L.C. v. City of New Orleans, 05-0489, p. 4 (La. 2/22/06), 924 So. 2d 104, 107. A political entity has no authority to take any action that is inconsistent with the Public Bid Law. Broadmoor, 04-0211 at p. 6, 867 So. 2d at 656; Hamp's, 05-0489 at p. 4, 924 So. 2d at 107.

Louisiana Revised Statute 38:2212 provides, in pertinent part:

A. (1)(a) All public work exceeding the contract limit [... ] to be done by a public entity shall be advertised and let by contract to the lowest responsible and responsive bidder who bid according to the bidding documents as advertised, and no such public work shall be done except as provided in this Part.
\* \* \*
(2) The term "bidding documents" is defined in R.S. 38:2211(A).

B. (1) The provisions and requirements of this Section and those stated in the bidding documents shall not be waived by any entity.
(2) Any public entity advertising for public work shall use only the Louisiana Uniform Bid Form as promulgated in accordance with the Administrative Procedure Act by the division of administration, office of facility planning and control. The bidding documents shall require only the following information and documentation to be submitted by the bidder at the time designated in the advertisement for bid opening: Bid Security or Bid Bond, Acknowledgment of Addenda, Base Bid,

Alternates, Signature of Bidder, Name, Title, and Address of Bidder, Name of Firm or Joint Venture, Corporation Resolution or written evidence of the authority of the person signing the bid, and Louisiana Contractors License Number, and on public works projects where unit prices are utilized, a section on the bid form where the unit price utilized in the bid shall be set forth including a description for each unit; however, unit prices shall not be utilized for the construction of building projects, unless the unit prices and their extensions are incorporated into the base bid or alternates.

Courts have strictly construed the requirements set forth in La. R.S. 38:2212. Broadmoor, 04-0211 at pp. 8-9, 867 So. 2d at 657. The jurisprudence interpreting the Public Bid Law is also clear that La. R.S. 38:2212(B)(1) clearly and unambiguously provides that the public entity shall not waive the provisions and requirements of the Public Bid Law and the bidding documents, which include the bidding instructions. See La. R.S. 38:2211(A)(2). Moreover, once a public entity establishes a requirement in its advertisement or bid form, that requirement must be uniformly followed by all bidders, and a bidder's failure to comply with every detail can invalidate the bid. Hamp's, 05-0489 at p. 11, 924 So. 2d at 111; Broadmoor, 04-0211 at p. 9, 867 So. 2d at 658.

**Responsiveness of Caldarera's Bid**

In the instant case, the bidding documents contain several references to the use of unit prices. The Special Project Procedures 1.16 provides:

A. The existing campus buildings currently utilize Siemens Building Technologies, Inc. for the Building Automation System (BAS) / Energy Management System (EMS) and Fire Detection and Alarm Systems. The systems as part of this project are specified in Section 15952 BUILDING AUTOMATION SYSTEM (BAS) / ENERGY MANAGEMENT SYSTEM (EMS) and SECTION 16727 FIRE DETECTION AND ALARM SYSTEM. In an effort to continue standardization and maintenance of existing campus systems Siemens Building Technologies, Inc. shall be utilized for this project.

B. In an effort to isolate the cost of the work for the proprietary systems by Siemens Building Technologies, Inc., the UNIT PRICE FORM shall be used in conjunction with the LOUISIANA UNIFORM PUBLIC WORK BID FORM for the following systems:

1. SECTION 15952 BUILDING AUTOMATION SYSTEM (BAS) / ENERGY MANAGEMENT SYSTEM (EMS)

2. SECTION 16727 FIRE DETECTION AND ALARM SYSTEM

C. The unit prices which shall include all cost including overhead and profit etc. for a complete operating system along with the unit price extension (Quantity times Unit Price) shall be filled in for all items listed on the UNIT PRICE FORM which is part of the LOUISIANA UNIFORM PUBLIC WORK BID FORM. **The total cost for each Section 15952 and 16727 shall be included as part of the TOTAL BASE BID.** [Emphasis original.]

D. The intent is not only to isolate the cost of the work but also use the unit prices submitted for the Siemens Systems as the only approved systems for use on this project.

The Instructions to Bidders 5.1.6 further provides:

Bidders are cautioned to complete all unit prices should such be required in the Bid Form. Unit prices represent a price proposal to do a specified quantity and quality of work. Unit prices are incorporated into the base bid or alternates, as indicated on the Unit Price Form, but are not the sole components thereof.

The Louisiana Uniform Public Work Bid Form used by the State in this case also provides that "[t]he Unit Price Form shall be used if the contract includes unit prices." The Unit Price Form further provides that "[t]his form shall be used for any and all work required by the Bidding Documents and described as unit prices. Amounts shall be stated in figures and only in figures." The Unit Price Form includes preprinted references to both Siemens Systems, with a quantity of one provided for each, and has blank spaces provided for the bidder to provide the unit price and unit price extension for each system.

From our review of these bidding documents, they clearly and unambiguously provide that all bidders were required to include unit prices for the Siemens BAS/EMS system and the Siemens Fire Detection and Alarm System on a Unit Price Form and were required to incorporate those prices into their base bid. Caldarera, however, while providing a unit price for the Siemens BAS/EMS system, did not provide a unit price in figures for the Siemens Fire Detection and Alarm System on its Unit Price Form but instead wrote "N/A."

Louisiana Revised Statute 38:2212(B)(2) provides an exclusive list of twelve items of information and/or documentation a public entity can require bidders to

provide in the bidding documents to evaluate the bid's responsiveness. See <u>Durr</u> <u>Heavy Construction, L.L.C. v. City of New Orleans</u>, 16-609, p. 3 (La. 4/15/16), 189 So. 3d 384, 386 (concurring opinion). In particular, La. R.S. 38:2212(B)(2) provides that the bidding documents shall require the bidder to submit, "on public works projects where unit prices are utilized, a section on the bid form where the unit price utilized in the bid shall be set forth including a description of each unit; however, unit prices shall not be utilized for the construction of building projects, unless the unit prices and their extensions are incorporated into the base bid or alternates."

Despite the unambiguous language found in the bidding documents requiring that the Siemens Fire Detection and Alarm System be set out as a unit price on the Unit Price Form, and the statutory language providing that unit prices, when utilized in a bid, are among the exclusive list of information that a public entity can require bidders to provide to evaluate the bid's responsiveness, Caldarera contends that it was not required to provide a unit price for the Siemens Fire Detection and Alarm System because it is not a true "unit price" within the meaning of the Public Bid Law, and as such, its failure to do so cannot be a basis for invalidating its bid.

"Unit Price" is defined in the Louisiana Administrative Code title 34, Part III, §309, which defines terms for purposes of the Louisiana Uniform Public Works bid form, as "the amount stated in a project bid representing the price per unit of materials and/or services." Additionally, the Instructions to Bidders 5.1.6 further defines a unit price as representing "a price proposal to do a specified quantity and quality of work," which is "incorporated into the base bid."

The bid documents in the instant case, including the Special Project Procedures, clearly describe the Siemens proprietary systems and that the cost is for a complete operating system, thereby describing the materials and/or services

10

or the quality of work to be performed. Additionally, the State set the quantity of one as the number of units for each system. Finally, because this is a building contract, the unit price was to be incorporated into the base bid, pursuant to the Instructions to Bidders and La. R.S. 38:2212(B)(2). Therefore, the Siemens Fire Detection and Alarm System meets the Public Bid Law's definition of a unit price.

Furthermore, we find no merit to Caldarera's argument that the bid at issue was a lump sum bid and that unit prices can only be utilized in unit price bids. The Public Bid Law does not differentiate between or otherwise define "lump sum bid" or "unit price bid," and nothing in the law prevents a lump sum bid from utilizing unit prices for some but not all items. Furthermore, there is no prohibition for listing a complete system as a unit price, i.e., there is no requirement that each component of a system be listed as a separate unit price.

Caldarera attempted to offer opinion testimony of Joe Caldarera at trial to address the issue of whether the instant project was a lump sum bid or a unit price bid and whether the Siemens Fire Detection and Alarm System was a unit price. However, this extrinsic evidence was excluded at the beginning of trial upon the trial court's granting of CORE and Woodward's motion in limine. In granting the motion, the trial court noted that "the only question that is in dispute that requires a determination by the court is the responsiveness of the bids that's been submitted and whether or not they were responsive to the bid instructions." Because the trial court found that the documents submitted and stipulated to speak for themselves, it did not find Joe Caldarera's intent or interpretation as to what was or was not submitted relevant.

From our review of the record, we do not find that the trial court abused its discretion in granting Woodward and CORE's motion in limine and excluding the opinion testimony of Joe Caldarera. See Heller v. Nobel Insurance Group, 00-0261 (La. 2/2/00), 753 So. 2d 841. A written instrument that is clear and

11

unambiguous is not subject to interpretation. See Beverly Construction Company v. Parish of Jefferson, 07-847, p. 5 (La. App. 5th Cir. 2/6/08), 979 So. 2d 551, 553. Furthermore, parole evidence is only properly admitted in regard to a document when that document is ambiguous on its face. Delaney v. Whitney National Bank, 96-2144, p. 6 (La. App. 4th Cir. 11/12/97), 703 So. 2d 709, 715, writ denied, 98-0123 (La. 3/20/98), 715 So. 2d 1211.

Accordingly, based on the foregoing, we find that the bid documents clearly state that bidders were required to submit a unit price for the Siemens Fire Detection and Alarm System and that Caldarera failed to state an amount in figures on the unit price form for this system. Therefore, we find no error in the trial court's judgment finding Caldarera's bid was non-responsive and denying Caldarera's requests for relief. See Great Lakes Dredge & Dock Company, L.L.C. v. State, through Coastal Protection and Restoration Authority, 14-0249, p. 10 (La. App. 1st Cir. 11/7/14), 167 So. 3d 682, 688-689.

**Responsiveness of Woodward's Bid**

CORE contends that Woodward's bid is non-responsive because: it failed to comply with the prohibitory law set forth in the regulations promulgated in accordance with the Louisiana Contractor's Licensing Law; the name of the entity submitting the bid as stated on the bid form is inconsistent with the certification of authority; the name of the bidder on the bid bond is inconsistent with the name of the entity submitting the bid; and the bid bond failed to properly identify the name of the project.

Louisiana Administrative Code title 46, part XXIX, §133 (formerly §109), promulgated in accordance with the Louisiana licensing laws, provides, in pertinent part:

> A. A person licensed or registered by the board shall bid, contract, and perform work in the name as it appears on the current

license or registration and the official records of the Licensing Board for Contractors.

The parties do not dispute that Woodward's contractor's license is issued in the name of "Woodward Design + Build, LLC." However, Woodward's name appears on the bid form for the project at issue as "Woodward Design + Build, LLC, a Louisiana Limited Liability Company." As such, CORE contends that Woodward violated La. Admin. Code tit. 46, pt. XXIX, §133 because it bid in a name other than that found in the official records of the Licensing Board for Contractors.

In support of its position CORE relies on Merrick, L.L.C. v. Airport Authority for Airport District No. 1 of Calcasieu Parish, 19-185, pp. 9-10 (La. App. 3rd Cir. 11/6/19), 283 So. 3d 596, 603-604. The Third Circuit found in Merrick, upon review of the same regulation, that licensing laws, like the Public Bid Law, are prohibitory laws. Merrick, 19-185 at p. 9, 283 So. 3d at 603. In Merrick, after attending a pre-bid conference under the name MK Constructors, a company, BDS, submitted a bid in the name of "BDS Constructors, LLC d/b/a MK Constructors." However, BDS's license was issued in the name of "BDS Constructors LLC" and MK Constructors was not registered or licensed in Louisiana. The court found that not only did BDS not bid in the name which appears on the official records of the Louisiana State Licensing Board for Contractors, in violation of La. Admin. Code. tit. 46, pt. XXIX, §109, but its name as it appeared on the bid form was not registered in the parish where the business was to be conducted, in violation of La. R.S. 51:281, and its name contained extra, impermissible phrases in violation of La. R.S. 12:1306, which prohibits the name of a limited liability company from containing the phrase "doing business as" or the abbreviation "d/b/a." See La. R.S. 12:1306(A)(2). Accordingly, the court in

Merrick found BDS's bid non-responsive. Merrick, 19-185 at p. 10, 283 So. 3d at 604.

In the instant case, however, unlike Merrick, Woodward did not submit its bid under a completely different name. Rather, Woodward added "a Louisiana Limited Liability Company" following the name under which it is licensed, "Woodward Design + Build, LLC." According to La. R.S. 12:1306(A)(1)(a), there is no difference between "limited liability company" or "LLC," and both are permissible names for limited liability companies. See Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority, 04-1274, 04-1275, 04-1276, p. 7 (La. App. 4th Cir. 2/2/05), 896 So. 2d 251, 255 (nothing in La. R.S. 12:1306 holds that the use of "LLC" instead of "L.L.C." would connote the existence of a separate entity who is not licensed to do business). As such, we find no merit to CORE's argument that Woodward violated a prohibitory law by submitting a bid in a name other than that found in the official records of the Licensing Board for Contractors.

Likewise, we find no merit to CORE's argument that the certification of authority submitted by Woodward was inconsistent with its bid form. Even if we were to find that there is a distinction between "Woodward Design + Build, L.L.C." and "Woodward Design + Build, LLC, a Louisiana Limited Liability Company," in compliance with the advertisement for bids, Woodward submitted written evidence of authority of the person signing the bid. The certification of authority submitted by Woodward states it was submitted on behalf of Woodward Design + Build, LLC and further states that such authority was conferred after a vote of Woodward Design + Build, LLC, a Louisiana Liability Company. Therefore, Woodward established evidence of authority of the person signing the bid. See La. R.S. 38:2212(B)(5).

Finally, we find no merit to CORE's arguments regarding the bid bond. The Instructions to Bidders 5.2.1 required that the "Bid Bond must be signed by both the bidder/principal and the surety." As we noted earlier, there is no distinction between "Woodward Design + Build, LLC" and "Woodward Design + Build, LLC, a Louisiana Limited Liability Company," and we find it insignificant that Woodward submitted the bid under Woodward Design + Build, LLC, a Louisiana Limited Liability Company and signed the bid bond under Woodward Design + Build, LLC. Furthermore, there is no requirement in the Public Bid Law or the bidding documents that mandates how a project must be identified on a bid bond. The bidding documents themselves use different levels of specificity in describing the project, with the advertisement for bid providing a more detailed description of the project than the bid form, and in fact, the project description on the bid bond is almost identical to that found on the bid form. Accordingly, we find CORE's final arguments without merit.[5]

## CONCLUSION

For the foregoing reasons, we affirm the March 29, 2019 judgment of the trial court. All costs of this appeal are assessed equally between CORE Construction Services, L.L.C. and J. Caldarera & Company, Inc.

**AFFIRMED.**

---

[5] We note that Caldarera also raised an assignment of error regarding Woodward's bid. However, the issues raised in the assignment of error were not placed before the trial court, and as such, are not properly before us on appeal. It is well settled that appellate courts will not consider issues raised for the first time, which were not pleaded in the court below and which the district court has not addressed. Council of City of New Orleans v. Washington, 09-1067, pp. 3-4 (La. 5/29/09), 9 So. 3d 854, 856.