H & O INVESTMENTS, LLC

VERSUS

PARISH OF JEFFERSON, THROUGH ITS
PARISH PRESIDENT CYNTHIA LEE SHENG

NO. 21-CA-188

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 814-440, DIVISION "B"
HONORABLE R. CHRISTOPHER COX, III, JUDGE PRESIDING

November 24, 2021

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Robert A. Chaisson

**AFFIRMED**
    **SMC**
    **FHW**
    **RAC**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
H & O INVESTMENTS, LLC
        Roy H. Maughan, Jr.
        Namisha D. Patel
        Joshua D. Roy

COUNSEL FOR INTERVENOR/APPELLEE,
RAMELLI JANITORIAL SERVICES, INC.
        Michael A. Thomas

COUNSEL FOR DEFENDANT/APPELLEE,
PARISH OF JEFFERSON
        W. Reed Smith

**CHEHARDY, C.J.**

In this public bid matter, plaintiff-appellant, H&O Investments, LLC, appeals the trial court's ruling dismissing with prejudice its Petition for Injunctive Relief and Declaratory Judgment. For the reasons that follow, we affirm the trial court's judgment.

FACTS AND PROCEDURAL HISTORY

Defendant-appellee, the Parish of Jefferson, issued an Advertisement for Bids for a "Three Year Contract to Provide Grass Cutting Services (Smooth/Rough) for the Jefferson Parish Department of Public Works – Parkways" on December 2, 2020. The Contract requires the successful bidder to perform regular mowing, weed eating, and line trimming, as well as landscape mulching twice a year and tree trimming "as needed," among other responsibilities.

The portions of the Parish's Bid Specifications that are relevant to this appeal are set out below. Under "Licensing," the Bid Specifications state:

Bidders shall possess the following licenses:

- Louisiana State Contractors' Commercial License with the classification of SPECIALTY: LANDSCAPE, GRADING AND BEAUTI-FICATION.
***
Bidders shall be licensed per LSA-R.S. 37:2150-2163 and shall furnish copies of the front and back of each required license. Failure to submit these copies will deem the bid non-responsive.

- Louisiana Department of Agriculture & Forestry State Landscape Horticulturalist License
- Louisiana Department of Agriculture & Forestry Commercial Pesticide Applicator License for Category 3: Ornamental and Turf[1]
- Louisiana Department of Agriculture & Forestry Commercial Pesticide Applicator License for Category 6: Right-of-Way & Industrial application

---

[1] Addendum #1 to the Bid Specifications, dated December 22, 2020, removed this particular licensure requirement.

All required licenses shall be valid through the term of the contract.

"Part I Qualifications" of the Bid Specifications state:

## MINIMUM EQUIPMENT

The Contractor must show proof of ownership, rental agreements and/or line(s) of credit to acquire the following minimum list of [mowing] equipment:[2]

"Part II Definitions" of the Bid Specifications further provide:

## EQUIPMENT REQUIREMENTS

The bid shall include all equipment, operators, fuel, maintenance, and transportation. … The Contractor must provide Jefferson Parish with copies of registration certificates and/or lease agreements or documentation verifying an open line of credit for equipment specified in the minimum equipment list …

## SUBCONTRACTORS

All mowing operations and related work must be performed by the Contractor. No subcontractors shall be allowed to perform these activities.

However, the Contractor may utilize a subcontractor for his chemical applications. The use of a subcontractor shall not relieve the Contractor the responsibility of ensuring the work meets the requirements of this contract. Additionally, the Parkways Department will not communicate directly with any subcontractors. All correspondence will be with the Contractor.

## TREE TRIMMING

---

[2] The list of minimum equipment includes:
- (24) String trimmers (minimum 25 cc)
- (12) Stick edgers (minimum 25 cc)
- (12) Backpack blowers (minimum 50 cc)
- (12) Manicure mowers with (60" or 72") cutting decks (front belly mount)
- (2) Tractors (85 hp or greater)
- (2) Boom mower attachment (slope)(minimum 28' reach)
- 15' (minimum) rotary cutting deck
- Street sweeper (minimum 3 CY debris hopper)

> … All tree trimming operations shall be under direct supervision of a Louisiana licensed landscape horticulturalist. The Contractor shall utilize hand saw and loppers only. … The Contractor shall notify the Parkways Department prior to trimming any trees. … Tree trimming shall occur on an as-needed basis, but should be factored in to the inclusive unit price for each type of mowing cycle.

After reviewing the responsive submissions, the Parish determined that Ramelli Janitorial Services, Inc. was the lowest responsible and responsive bidder, and Rotolo Consultants, Inc. ("RCI"), was the second lowest bidder. H&O Investments, LLC, which held the grass-cutting Contract with the Parish through 2020, was the third lowest bidder. H&O claims that its bid package included all necessary forms and proof of applicable licenses, insurance, and equipment, in accordance with the Bid Specifications, but neither Ramelli nor RCI strictly complied with the specifications.

H&O lodged a bid protest with the Parish, which was denied. H&O then filed a Petition for Injunctive Relief and Declaratory Judgment naming the Parish of Jefferson, through its President, Cynthia Lee Sheng, as defendant, arguing that because neither Ramelli nor RCI were responsive bidders, the Parish should be enjoined from entering into a contract with either one.[3] More specifically, H&O argued that Ramelli did not "possess" the Agriculturalist license produced with its bid, as the license names someone who is not a Ramelli employee. Additionally, H&O claimed that subcontractors are prohibited from engaging in "mowing related" activities, and tree trimming is "mowing related." H&O further argued that RCI did not provide proof either of its ownership of the necessary equipment or of its ability to acquire the equipment listed in the Bid Specifications. Ramelli and RCI intervened.

---

[3] H&O's request for a declaratory judgment asked the trial court to declare H&O the lowest responsible and responsive bidder for the three-year grass-cutting Contract or, alternatively, to declare that all bids were non-conforming and that new bids should be submitted.

A preliminary injunction hearing was scheduled for February 25, 2021. The parties and intervenors agreed on the record at the beginning of the hearing that the hearing would address both the preliminary and permanent injunction requests. The trial court heard testimony from Bryan Parks, the Director of Parkways for the Parish and the drafter of the Bid Specifications; Jennifer Cafarella, who held the Horticulturalist license Ramelli produced with its bid; and David Mahler, the owner of H&O, the plaintiff-appellant.

Mr. Parks testified that, for purposes of determining whether work from a subcontractor is permitted, tree trimming activities, while included as part of the bid package as a whole, are not part of "mowing operations and related work," as tree trimming is performed less often than mowing and has separate requirements. He explained that the horticulturalist license requirement was included in the Bid Specifications because the Parish learned that a Louisiana licensed horticulturalist must directly supervise mulching operations and any tree pruning or trimming when the Department of Agriculture stopped previous contractors from performing this work without licensed supervision. Mr. Parks further explained that chemical applications are mowing related, or at least part of the mowing cycle, but that the Bid Specifications specifically permit the Contractor to use subcontractors for chemical applications. Moreover, Mr. Parks testified that subcontractors may be used for anything *other than* mowing and mowing-related operations.

With regard to proving ownership of the necessary equipment, Mr. Parks explained that a bidder only becomes a "Contractor" when the bidder has been awarded the Contract and the Contract has been signed. The listed equipment cannot be verified during the bid process, thus a bidder's failure to comply with the requirement that "[t]he Contractor must show proof of ownership, rental agreements and/or line(s) of credit to acquire the following minimum list of

[mowing] equipment" does not render the bid non-responsive, because no bidder is a Contractor at the time it submits its bid.

Ms. Cafarella testified that she and her husband own Greg's Lawn Service, LLC, together. Greg's Lawn Service has held a service contract with Ramelli since 2008 and receives a 1099 tax form annually from Ramelli. H&O's owner, Mr. Mahler, testified that H&O submitted proof of its line of credit with its bid to show that it held or could obtain the proper equipment. On cross examination, Mr. Mahler admitted that H&O had used a subcontractor for pine straw placement and mulching one time in the past.

At the conclusion of the hearing, the trial court denied H&O's request for preliminary and permanent injunctive relief and dismissed H&O's lawsuit with prejudice. The trial court stated that it believed the Parish had acted in good faith in selecting Ramelli as the lowest responsive and responsible bidder. The trial court found Mr. Parks' testimony regarding the licensure requirement and the Parish's interpretation of the meaning of "Contractor" to be particularly persuasive. H&O timely appeals the trial court's judgment.

## DISCUSSION

H&O sets forth seven assignments of errors that essentially raise three issues: (1) whether Ramelli's bid submission was responsive in light of the fact that the Horticulturalist license included with its bid belonged to another person/entity, not to Ramelli or a Ramelli employee; (2) whether RCI's bid submission was responsive because it did not include proof that it owned the necessary equipment, or the means to acquire the equipment necessary to perform the Contract; and (3) whether the trial court erred in admitting the entire record of the proceedings into evidence at the injunction hearing.

We review the trial court's decision to deny preliminary or permanent injunctive relief under the manifest error standard. *Mary Moe, L.L.C. v. Louisiana*

*Bd. of Ethics*, 03-2220 (La. 4/14/04), 875 So.2d 22, 29; *Zeringue v. St. James Par. Sch. Bd.*, 13-444 (La. App. 5 Cir. 11/19/13), 130 So.3d 356, 359.

Louisiana's Public Bid Law, La. R.S. 38:2211 *et seq.*, prescribes the conditions upon which public work may be done on behalf of the state or its political subdivisions. *Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Auth.*, 04-211, 04-212 (La. 3/18/04), 867 So.2d 651, 656. The purpose of the statute is to protect taxpaying citizens "against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices." *Id.*; *see also A.M.E. Disaster Recovery Servs., Inc. v. St. John Baptist Par. Sch. Bd.*, 10-500 (La. App. 5 Cir. 11/23/10), 54 So.3d 719, 722, *writ denied*, 10-2831 (La. 2/11/11), 56 So.3d 1005. "A political entity has no authority to take any action which is inconsistent with the Public Bid Law." *Broadmoor*, 867 So.2d at 656 (citing *La. Associated Gen. Contractors, Inc. v. Calcasieu Par. Sch. Bd.*, 586 So.2d 1354, 1362 (La. 1991)). When the threatened action of a municipal body is "in direct violation of a prohibitory law," a court may enjoin the threatened action without showing irreparable injury. *La. Associated Gen. Contractors*, 586 So.2d at 1359.

The Public Bid Law requires that certain public contracts be let to the "lowest responsible and responsive bidder who bid according to the bidding documents as advertised[.]" La. R.S. 38:2212(A)(1)(a). This does not constrain the public entity to accept the lowest monetary bid, rather, the public entity contracting the work has wide discretion to determine bidder responsibility and may look to financial ability, skill, integrity, business judgment, experience, reputation, quality of previous work on contracts, and other similar factors bearing on the bidder's ability to successfully perform the contract. *Broadmoor*, 867 So.2d at 656 (citing *Housing Auth. of the City of Opelousas, La. v. Pittman Constr. Co., Inc.*, 264 F.2d 695, 698 (5ᵗʰ Cir. 1959)). However, when a public entity places certain

requirements in its advertisements for bids and on its bid forms, it is bound by those requirements and may not choose to waive them at a later date. *Broadmoor*, 867 So.2d at 657; La. R.S. 38:2212(A)(1)(a). Bid form requirements "must be completely and accurately observed. The Public Bid Law could not be more clear in stating that a bidder's failure to comply with every detail can invalidate the bid." *Barriere Constr. Co., L.L.C. v. Terrebonne Parish Consol. Gov't*, 99-2271 (La. App. 1 Cir. 2/18/00), 754 So.2d 1123, 1127, *writ denied*, 00-801 (La. 5/5/00), 761 So.2d 546.

As to the Parish's determination that Ramelli was the lowest responsive and responsible bidder, H&O raises two issues – first, whether the requirement to "possess" the appropriate license means the license must name the bidder (or a bidder's employee); second, if the license is not held in the bidder's name, whether a license held by Ramelli's subcontractor violates the Bid Specification that prohibits subcontractors from performing "mowing and mowing related activities."

H&O argues that Ramelli did not possess the license it produced in conjunction with its bid because that license is held by Ms. Jennifer Cafarella, who is an employee/owner of Greg's Lawn Service, LLC, not Ramelli, and her horticulturalist license is officially associated with Greg's, not Ramelli. According to H&O, La. R.S. 3:3804(C) of the Louisiana Horticulture Law prohibits Ms. Cafarella from associating her license with Ramelli.[4] Further, according to H&O, LA. ADMIN. CODE tit. 7, pt. XXIX, ch. 1, § 115, prohibits Ms. Cafarella from holding her license with more than one entity.[5]

---

[4] La. R.S. 3:3804(C) provides: "No personal shall receive fees, whether directly or indirectly, for engaging in a regulated profession, or advertise as engaged in a regulated profession, or solicit business in a regulated profession, unless the person holds a valid appropriate license issued by the commissioner, or has a regular employee who holds a valid appropriate license issued by the commissioner, or is employed by or is working under the direct supervision of a person who holds a valid appropriate license issued by the commissioner."

[5] LA. ADMIN. CODE tit. 7, pt. XXIX, ch. 1, § 115 (B) provides: "A person holding a license in a regulated profession may be the licensee for only one person or business. The licenses of all licensees regularly assigned to work in any outlet shall be prominently displayed at all times in a location accessible to the general public or any representative of the commission."

In opposition, the appellees, the Parish and Ramelli, both argue that the horticulturalist license need not be in Ramelli's name, and that Ramelli's submission of a subcontractor's license is permitted and does not render the bid non-responsive; the prohibition against subcontractors is only for "mowing operations and related work," and tree trimming does not fall within "mowing operations and related work." In support, the appellees rely upon Mr. Parks' testimony that tree trimming, which the Bid Specifications indicate shall occur "as needed," is not part of "mowing and related activities."

Here, the prohibition against use of subcontractors applies to "mowing operations and related work," with an exception carved out for chemical applications that *are* related to mowing activities. In other words, a subcontractor may perform chemical/pesticide application, notwithstanding the fact that this function is mowing-related. Notably, the bidder must "possess" both a Commercial Pesticide Applicator license and a Horticulturalist license. Under these circumstances, if the Commercial Pesticide Applicator license may be held by a subcontractor, we see no reason why possession of a license for purposes of responding to a bid advertisement requires the license to be issued in the name of the bidder or the bidder's employee, so long as the work for which the license is required does not fall within the list of activities for which subcontractors are prohibited.

Moreover, we find no merit in H&O's argument that tree trimming is a mowing-related activity. In addition to the testimony of Mr. Parks, who indicated that tree trimming occurs only "as needed," and that it is not a mowing-related activity, Addendum # 2 to the Bid Specifications clarifies that "every smooth cut cycle shall include chemical application (non-selective herbicide), edging, grass cutting (mowing), green debris removal, string trimming, sweeping/blowing and trash removal (see PART II, DEFINITIONS)." This list of mowing-related

activities does not include tree trimming. Further, the separate provision in Part II of the Bid Specifications related to "Tree Trimming" mandates that "tree trimming operations shall be under direct supervision of a Louisiana licensed landscape horticulturalist" and requires that the Parish be notified any time tree trimming occurs. Nothing in this section prohibits the use of subcontractors.

In addition, we find no merit to H&O's argument that Ms. Cafarella is in violation of La. R.S. 3:3804(C) or LA. ADMIN. CODE tit. 7, pt. XXIX, ch. 1, § 115. The Bid Specifications indicate that tree trimming "shall be under direct supervision of a Louisiana licensed landscape horticulturalist." Pursuant to La. R.S. 3:3804(C), Ramelli could be "working under the direct supervision of a person who holds a valid appropriate license." Use of the phrase "under direct supervision" does not imply that an employer-employee relationship is required, and we fail to read such a requirement into the statute. Similarly, we see no impropriety under § 115, which states that a "person holding a license in a regulated profession may be the licensee for only one person or business." The parties do not dispute that Ms. Cafarella's license is associated only with Greg's Lawn Service, and as seen above, there is no specific prohibition against Greg's Lawn Service, as a subcontractor, directly supervising tree trimming for Ramelli. We therefore find no manifest error in the trial court's refusal to enjoin the Parish from contracting with Ramelli on the basis that its bid was non-responsive.

Next, H&O argues that RCI should not have been named the second lowest responsible and responsive bidder because RCI failed to include "proof of ownership, rental agreements and/or line(s) of credit" for the necessary equipment.[6] In response, the Parish and RCI point out that this provision in the Bid

---

[6] Part I of the Bid Specifications indicates that "[t]he Contractor must show proof of ownership, rental agreements and/or line(s) of credit to acquire the following minimum list of [mowing] equipment …", and Part II of the Bid Specifications states: "[t]he Contractor must provide Jefferson Parish with copies of registration certificates and/or lease agreements or documentation verifying an open line of credit for equipment specified in the minimum equipment list[.]"

Specifications refers only to the "Contractor," not a "bidder." Having already determined that the trial court did not manifestly err in refusing to enjoin the Parish from contracting with Ramelli as the lowest responsible and responsive bidder, we pretermit any discussion of H&O's assignments of error regarding RCI's status as the second lowest responsible and responsive bidder.

Lastly, with regard to the trial court's admission of the entire record into evidence, H&O timely objected at the hearing and therefore preserved its right to assign the trial court's ruling as error on appeal pursuant to La. Code Evid. Art. 103(A)(1). In conjunction with its objection to the admission of the record into evidence, H&O further argued that the trial court failed to issue a written order stating that the injunction hearing would be conducted by affidavit or partially with affidavits, in compliance with La. C.C.P. art. 3609.[7] H&O specifically objects to the introduction into evidence of the affidavits of Bryan Parks, Cody Necaise, and Robert Ramelli.

Erroneous evidentiary rulings are subject to a harmless error analysis. *Lapuyade v. Rawbar, Inc.*, 15-705 (La. App. 5 Cir. 4/13/16), 190 So.3d 1214, 1220, *writs denied*, 16-908, 16-916, 16-917 (La. 9/6/16), 199 So.3d 610-11. We find no error in the trial court's ruling admitting the entire record into evidence. Alternatively, even if the trial court's decision to admit the entire record, including affidavits, into evidence was erroneous, the error is harmless, as it did not affect the result reached or deprive any party of any substantial rights. La. Code Evid. Art. 103(A); *Lapuyade*, 190 So.3d at 1220. Although the trial court identified particular paragraphs of Mr. Parks' affidavit in its oral reasons for

---

[7] La. C.C.P. art. 3609 provides, in pertinent part:
> The court may hear an application for a preliminary injunction or for the dissolution or modification of a temporary restraining order or a preliminary injunction upon the verified pleadings or supporting affidavits, or may take proof as in ordinary cases. If the application is to be heard upon affidavits, the court shall so order in writing, and a copy of the order shall be served upon the defendant at the time the notice of hearing is served.

judgment, the paragraphs to which the trial court referred are repetitive of or encapsulated by Mr. Parks' live hearing testimony. Where evidence is admitted that is merely cumulative of other evidence in the record, any error in its admission is harmless. *Metairie Club Gardens Assoc., Inc. v. Parish of Jefferson*, 16-139 (La. App. 5 Cir. 12/28/16), 209 So.3d 1071, 1077. There is no indication that the trial court relied upon the affidavits of Cody Necaise or Robert Ramelli in reaching its ruling, and H&O provides no additional briefing or specific argument in this regard.[8] Finally, Article 3609 requires the trial court to order in writing that the injunction will be heard on affidavits, and written notice shall be served upon *the defendant*, not upon the plaintiff. The defendant (the Parish) and intervenors (Ramelli and RCI) all waived Article 3609 notice requirements at the hearing. Although the record does not show that the trial court ordered in writing that the application would be heard upon affidavits, the hearing was not in fact held on affidavits (only), as plaintiff-appellant was permitted to offer live testimony, upon which the trial court relied in reaching its ruling. This assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the trial court's judgment, dismissing H&O Investments, LLC's Petition for Injunctive Relief and for Declaratory Judgment with prejudice, is affirmed.

**AFFIRMED**

---

[8] Uniform Rules—Courts of Appeal, Rule 2-12.4 (B)(4) provides: "All assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed." Restating an assignment of error in brief without argument or citation of authority does not constitute briefing. *Deubler v. Bogalusa City Schools*, 18-312 (La. App. 1 Cir. 9/21/18), 262 So.3d 393, 401 (citing *State v. Wilson*, 13-996 (La. App. 5 Cir. 5/21/14), 142 So.3d 275, 279-80).

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

NANCY F. VEGA
CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **NOVEMBER 24, 2021** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

# 21-CA-188

## E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE R. CHRISTOPHER COX, III (DISTRICT JUDGE)
JOSHUA D. ROY (APPELLANT)       MICHAEL A. THOMAS (APPELLEE)       W. REED SMITH (APPELLEE)

## MAILED

NAMISHA D. PATEL (APPELLANT)        KEITH J. BERGERON (APPELLEE)
ROY H. MAUGHAN, JR. (APPELLANT)     TERRENCE L. BRENNAN (APPELLEE)
ATTORNEYS AT LAW                    ATTORNEYS AT LAW
634 CONNELL'S PARK LANE             755 MAGAZINE STREET
BATON ROUGE, LA 70806               NEW ORLEANS, LA 70130